# WALLISON & WALLISON LLP

20 East 69th Street
Suite 5A
New York, New York 10021

Jeremy L. Wallison, Esq.
Tel (Main): 212.292.1010
Tel (Direct): 212.292.1011
Fax: 212.671.1561
Email: jw@wallisonllp.com

June 21, 2019

VIA ECF (with courtesy copy to: Torres_NYSDChambers@nysd.uscourts.gov)

Hon. Analisa Torres
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
Courtroom 15D
New York, NY 10007-1312

    Re:    Casa Express Corp, as Trustee of Casa Express Trust v. Bolivarian Republic of Venezuela; 18-cv-11940 (AT) [rel. 19-cv-3123]

Dear Judge Torres:

    This firm represents Casa Express Corp, as trustee of Casa Express Trust ("Casa Express"), the plaintiff in the above-referenced action. We write jointly with counsel for Bolivarian Republic of Venezuela (the "Republic" or "Venezuela"), the defendant in the above-referenced action, in advance of the Initial Pretrial Conference in this case, scheduled for Wednesday, June 26, 2019, at 11:00 a.m.

**Brief Description of the Case**

    Casa Express alleges it is the beneficial owner of interests in two debt securities issued by Venezuela. The first, 13.625% global bonds due 2018, ISIN No. US922646AT10, CUSIP No. 922646AT1 (the "Global Bonds"), was issued in 1998, with a follow-on offering in 2004, pursuant to a Fiscal Agency Agreement dated as of August 6, 1998 (the "1998 FAA") among Venezuela, Banco Central de Venezuela and The Chase Manhattan Bank. The second, a 13.625% global note due 2018, ISIN No. USP9395PAA95, CUSIP No. P9395PAA9 (the "Global Note"), was issued in 2002 pursuant to a Fiscal Agency Agreement dated as of July 25, 2001 (the "2001 FAA") among Venezuela, Banco Central de Venezuela, Deutsche Bank AG and Bankers Trust Company. Casa Express alleges that both debt securities obligated Venezuela to repay principal in full on August 15, 2018, and that, until full repayment of principal, Venezuela was and continues to be obligated to pay interest on principal semi-annually in arrears, on February 15 and August 15 of each year, at a rate of 13.625% *per annum*.

    Casa Express further alleges that, beginning with the interest payments due on February 15, 2018, Venezuela has failed to make any of the required interest and principal payments on the Debt Securities, and thus is in breach of its obligations under both debt securities. Accordingly, in this action, Casa Express seeks to recover from Venezuela its

alleged damages, as a beneficial owner of interests in the two debt securities, resulting from Venezuela's alleged breaches, including all accrued and unpaid principal and interest (including interest that may yet accrue and be unpaid prior to judgment), together with prejudgment interest and attorneys' fees.

Venezuela is a foreign state within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603. Casa Express alleges that Venezuela waived its sovereign immunity in both the 1998 FAA and the 2001 FAA for suits in this Court relating to the Global Bonds and Global Note, respectively.

Today, Venezuela filed its answer to the complaint in this action, asserting three affirmative defenses: impossibility, state of necessity, and international comity, which are described below.

**Contemplated Motions**

For its part, Casa Express believes that the information in the public record, including the available documentation of the terms of the debt securities, and Venezuela's breach of its principal and interest payment obligations thereunder, make this the rare case where no discovery is needed and the parties can move immediately to summary judgment. Venezuela's assertion of three affirmative defenses does not change that. If Venezuela believes it needs additional evidence to dispute Casa Express' entitlement to summary judgment or to support one of its three affirmative defenses, Venezuela may argue in its opposition that summary judgment should be deferred under Federal Rule of Civil Procedure 56(d).

As for Venezuela's competing proposal that Casa Express' motion for summary judgment wait for a decision on Venezuela's anticipated motion seeking a further stay of this case or dismissal of Plaintiff's claims without prejudice, Casa Express respectfully submits that that would be unwarranted under the federal rules, inefficient, and prejudicial as other creditors of Venezuela rapidly move toward judgments in other cases.

Instead, the most efficient and fair way to resolve the parties' motions is for Casa Express to file a motion for summary judgment and then for Venezuela to file a cross-motion along with its opposition. Plaintiff's case management plan, which is being emailed to the Court contemporaneously with this letter, proposes a schedule for adjudicating both parties' motions in a fair and efficient manner.

For its part, the Republic intends to ask the Court to abstain by staying the case or dismissing without prejudice on three bases in light of the extraordinary political, humanitarian, and economic crisis facing the Republic.

*First*, the present political crisis presents a situation in which performance is impossible at this time. As the Court is aware, the government of Interim President Juan Guaidó (the "Interim Government") is, as a matter of U.S. law, the only recognized government of the Republic and solely authorized to assert the interests of the Republic in U.S. courts. Only the Interim Government can exercise the authority to defend claims against the

Republic brought in U.S. courts. *See Guaranty Trust Co. v. United States*, 304 U.S. 126, 137–38 (1938); *Pfizer v. Government of India*, 434 U.S. 308, 319–20 (1978); *see also Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 673 (S.D. Fla. 1988) (deferring to Executive Branch recognition of Delvalle government of Panama and rejecting notices of appearances filed by attorneys representing the Noriega regime)

Under present circumstances, it is impossible for the Interim Government to perform or to settle the financial debt contracts at issue in this case because the Interim Government does not currently have full access to, or control over, the financial resources and relevant financial documents of the Republic.

The Interim Government cannot access the Republic's financial resources and relevant financial documents because of the continued domination of the country by former President Maduro and his associates. That regime is illegitimate, but the Maduro group has nonetheless refused to relinquish power and continues to exercise a significant degree of control over Venezuelan governmental and financial institutions. As a result, it is at present impossible for the Interim Government to access the financial resources and relevant financial documents of the Republic necessary to resolve the massive debt outstanding. *See 407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 244 N.E.2d 37, 41 (N.Y. 1968) (citing Restatement (First) of Contracts § 457 (1932)). These circumstances could not have been foreseen by the parties at the time that these debt contracts were incurred.

*Second,* the Republic currently faces an unparalleled, complex humanitarian crisis caused by the ongoing misconduct of the Maduro group. Since Mr. Guaidó assumed the office of Interim President in January 2019, the Maduro group has refused to relinquish power and has refused to permit humanitarian assistance to enter the country. The country has been wracked by blackouts, hyperinflation, and shortages of food and medicine. The Republic's citizens lack access to the most basic necessities, including food, potable water, healthcare, and sanitation. These circumstances have resulted in one of the world's largest mass migrations, as millions of Venezuelans have been forced to seek refuge in other countries in the region and throughout the world.

It is well-settled that customary international law is a part of U.S. law, *see The Paquete Habana*, 175 U.S. 677, 700 (1900) ("International law is part of our law … ."); *Kadic v. Karadzic*, 70 F.3d 232, 246 (2d Cir. 1995) (accepting "the settled proposition that federal common law incorporates international law"), and U.S. courts apply defenses derived from customary international law in cases involving foreign sovereigns, *e.g.*, *Yousuf v. Samantar*, 699 F.3d 763, 768–69 (4th Cir. 2012) ("'Head-of-state immunity is a doctrine of customary international law' pursuant to which an incumbent 'head of state is immune from the jurisdiction of a foreign state's courts.'").

One such defense drawn from customary international law is the doctrine of necessity (*état de nécessité*). Under that doctrine, a state's obligations may be excused where an essential interest of the state is put in "extreme peril" that "represents a grave danger to the existence of the State itself, its political or economic survival, the continued functioning of its essential services, the maintenance of internal peace, [or] the survival of a sector of its population."

3

*Yearbook of the International Law Commission, 1980*, vol. II, pt. 1, p. 14.  *See also Republic of Argentina v. BG Grp. PLC*, 715 F. Supp. 2d 108, 124 (D.D.C. 2010), *aff'd*, 555 F. App'x 2 (D.C. Cir. 2014) (citing *Case Concerning The Gabcikovo–Nagymaros Project (Hungary/Slovakia)*, 1997 I.C.J. 7, for the proposition that "the 'state of necessity' doctrine, as codified in Article 25 of the International Law Commission's Articles on State Responsibility, is limited to circumstances in which there is 'grave and imminent peril'").  The doctrine "recognizes … that the duty of a Government to ensure the proper functioning of its essential public services outweighs that of paying its debts.  No State is required to execute, or to execute in full, its pecuniary obligation if this jeopardizes the functioning of its public services and has the effect of disorganizing the administration of the country."  *Yearbook of the International Law Commission, 1980*, vol. II, pt. 2, p. 37.

Present circumstances in the Republic threaten grave and imminent peril to the millions of the Republic's citizens and thus amount to a state of necessity under customary international law.  The Republic cannot, consistent with its obligations to its citizens under international law, allocate extremely limited financial resources at this time to pay or settle financial debts while its citizens are starving and lack access to the most basic necessities.  The obligation of the Republic to perform its obligations at this time under the relevant financial debt contracts is therefore deferred in light of the Republic's current state of necessity.

*Third*, the Republic intends to ask this Court to stay its hand for a period of time while the Republic formulates a comprehensive plan for addressing the humanitarian crisis, to be followed by a sustainable economic recovery plan, to be supported by the international community, and the orderly, consensual debt restructuring of all of the legitimate claims against the Republic and its state-owned enterprises.  The Republic's orderly, consensual debt restructuring plan, once adopted, will be fully consistent with the law and foreign policy of the United States.

The United States has expressed its strong support for the Interim Government and has emphasized the need for an expeditious resolution of the current humanitarian crisis. According to President Trump, the United States has firmly committed itself to "rebuilding Venezuela's infrastructure and economy," and "supporting the effort to restore democracy and stability in Venezuela." *President Donald J. Trump Stands for Democracy in Venezuela* (May 1, 2019), *available at* https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-stands-democracy-venezuela/.  As the Treasury Department has explained, "The United States fully supports the efforts of Interim President Juan Guaidó to address the endemic corruption, human rights abuses, and violent repression that has become the hallmark of the illegitimate Maduro group, and looks forward to the restoration of a democratically elected government for the people of Venezuela." U.S. Dep't of the Treasury, Press Release, *Treasury Sanctions Governors of Venezuelan States Aligned with Maduro* (Feb. 25, 2019), *available at* https://home.treasury.gov/news/press-releases/sm616.

Under principles of international comity, this Court should abstain from exercising jurisdiction or stay this action in order to allow the Interim Government to address the humanitarian crisis and to develop and implement its program to settle legacy claims, including

the claims at issue here, through an orderly, consensual debt restructuring plan. *See Canada Southern Railway Co. v. Gebhard*, 109 U.S. 527, 539 (1883).

The parties' joint case management plan is being emailed to the Court contemporaneously with this letter. The Republic asks that the Court first consider a motion to stay or dismiss without prejudice in light of the extraordinary political, humanitarian and economic crisis on the grounds described above. The Republic also asks that if this relief is not granted, that the Court give the Republic a reasonable time to determine that Plaintiffs have standing to sue and acquired their rights in the ordinary course without reservation of rights under New York's General Obligation Law 13-107.

**Prospects of Settlement**

The parties have not yet had meaningful settlement discussions. The Republic anticipates that an orderly consensual debt restructuring can and will be achieved, but believes that settlement is unlikely at this stage in the litigation.

Plaintiff also believes that settlement is unlikely at this stage of the litigation, but that adjudication of its summary judgment motion will help in that process.

The Republic intends to establish and execute a comprehensive plan to address its debt obligations and claims in an orderly process in coordination with the international community and consistent with international standards and U.S. foreign policy. In light of the extraordinary political, humanitarian and economic crisis, this process will take time.

In the Republic's view, engaging in piecemeal litigation at this time, over what will eventually amount to billions of dollars in claims, would divert resources from urgent humanitarian needs, resolution of which will be a prerequisite to execution of its comprehensive resolution of outstanding claims.

Respectfully submitted,

| | |
|---|---|
| /s/ Jeremy Wallison | /s/ Kent Yalowitz |
| Jeremy L. Wallison | Kent A. Yalowitz |
| WALLISON & WALLISON LLP | ARNOLD & PORTER KAYE SCHOLER LLP |
| 20 East 69th Street, Suite 5A | 250 West 55th Street |
| New York, NY 10021 | New York, NY 20019 |
| Phone: 212.292.1011 | Phone: 212.836.8344 |
| jw@wallisonllp.com | Kent.Yalowitz@arnoldporter.com |
| *Counsel for Plaintiff* | *Counsel for Defendant* |