**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHARO GAIA FUND, LTD. and PHARO MACRO FUND, LTD.,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>THE BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>　　　　　　　Defendant. | Case No. 19-cv-3123 (AT)<br>Related to 18-cv-11940 (AT) |
| CASA EXPRESS CORP, as Trustee of CASA EXPRESS TRUST,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>THE BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>　　　　　　　Defendant. | Case No. 18-cv-11940 (AT)<br>Related to 19-cv-3123 (AT) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT**

WALLISON & WALLISON LLP
Jeremy L. Wallison, Esq.
jw@wallisonllp.com
20 East 69th Street, Suite 5A
New York, NY  10021
(212) 292-1011

*Counsel for Casa Express Corp,*
*as Trustee of Casa Express Trust*

GIBSON, DUNN & CRUTCHER LLP
Matthew D. McGill
MMcGill@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC  20036
(202) 887-3680

Anne M. Champion
AChampion@gibsondunn.com
200 Park Avenue
New York, NY  10166
(212) 351-4000

*Counsel for Plaintiffs Pharo Gaia Fund,*
*Ltd. and Pharo Macro Fund, Ltd.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 1

      A.   The Bonds ................................................................................ 1

      B.   The Fiscal Agency Agreements ............................................... 5

      C.   Venezuela's Breaches .............................................................. 6

      D.   Plaintiffs' Lawsuits ................................................................. 7

ARGUMENT ....................................................................................................... 9

   I.   Venezuela Has Waived Sovereign Immunity ................................. 9

   II.  Undisputed Evidence Shows That Venezuela Breached Its Contractual
       Obligations Under The Bonds and the Fiscal Agency Agreements.............. 10

   III. Plaintiffs Are Entitled To Damages .............................................. 15

   IV. Plaintiffs Are Entitled to Postjudgment Interest ............................ 19

   V.  The Court Should Enter Judgment Promptly ................................. 19

CONCLUSION.................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires,*
415 F.3d 242 (2d Cir. 2005)...........................................................................10

*Capital Ventures Int'l v. Republic of Argentina,*
552 F.3d 289 (2d Cir. 2009)...........................................................................16

*Cappiello v. ICD Publ'ns, Inc.,*
720 F.3d 109 (2d Cir. 2013)...........................................................................19

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
932 F.3d 126 (3d Cir. 2019)...........................................................................19

*EM Ltd. v. Republic of Argentina,*
695 F.3d 201 (2d Cir. 2012)...........................................................................10

*Junger v. John V. Dinan Assocs., Inc.,*
164 A.D.3d 1428 (2d Dept 2018) ...................................................................11

*NML Capital v. Republic of Argentina,*
17 N.Y.3d 250 (2011) ................................................................................15, 16

*NML Capital v. Republic of Argentina,*
435 F. App'x 41 (2d Cir. 2011) ..................................................................16, 19

*OI European Group B.V. v. Bolivarian Republic of Venezuela,*
16-cv-1533 (D.D.C. Nov. 1, 2019) ..................................................................20

*Petróleos de Venezuela, S.A. et al. v. MUFG Union Bank, N.A. et al.,*
19-cv-10023 (S.D.N.Y)....................................................................................20

**Statutes**

28 U.S.C. § 1604.....................................................................................................9

28 U.S.C. § 1605(a)(1).............................................................................................9

28 U.S.C. § 1608(a)(1).............................................................................................7

28 U.S.C. § 1608(d)..................................................................................................7

28 U.S.C. § 1961(a).................................................................................................19

CPLR  § 5001..........................................................................................................16

ii

CPLR § 5004 ...............................................................................................................16

**Rules**

Fed. R. Civ. P. 54(c) ...................................................................................................3

Fed. R. Civ. P. 56(a) ..................................................................................................9

**Other Authorities**

Reuters, *Allies of Venezuela's Guaido file lawsuit over PDVSA 2020 bond* (Oct. 29, 2019), https://reut.rs/2XrUKZm .........................................................................20

## PRELIMINARY STATEMENT

This is a simple case.  Plaintiffs own beneficial interests in three series of bonds ("the Bonds") issued by Defendant the Bolivarian Republic of Venezuela.  Since late 2017, Venezuela has failed to make contractually mandated principal and interest payments on the Bonds. Venezuela has expressly waived sovereign immunity and has withdrawn its affirmative defenses. This Court therefore should grant Plaintiffs' consolidated motion for summary judgment on their breach-of-contract claims and enter judgment against Venezuela in the following amounts:

For Pharo Gaia Fund Ltd. and Pharo Macro Fund Ltd. ("the Funds"): $353,468,125, plus any interest payments that may accrue and remain unpaid prior to the date of judgment, along with prejudgment interest, attorneys' fees, and postjudgment interest.

For Casa Express Corp ("Casa Express"), as trustee of Casa Express Trust ("the Trust"): $36,921,587.50, plus any interest payments that may accrue and remain unpaid prior to the date of judgment, along with prejudgment interest, attorneys' fees, and postjudgment interest.

## BACKGROUND

### A.     The Bonds

These related cases involve three series of bonds issued by Venezuela.  The first two series of bonds, designated ISIN US922646AT10 and ISIN USP9395PAA95, have materially identical terms:  They both matured in August 2018 and accrue interest at a rate of 13.625% per year.  Ex. E at 1 (2018s – 1998 Issuance Registered Global Security); Ex. G at 2 (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶¶ 12–14, 25–27.[1]  Plaintiffs refer to the series of bonds

---

[1]  Citations to exhibits are to the exhibits to the Joint Declaration of Matthew D. McGill and Jeremy L. Wallison, ECF No. 42.  Except when stated otherwise, citations to the docket are to the docket in *Pharo Gaia Fund Ltd. & Pharo Macro Fund Ltd. v. Bolivarian Republic of Venezuela*, 19-cv-3123 (S.D.N.Y.). A docket entry in *Casa Express Corp, as Trustee of Casa*

designated ISIN US922646AT10 as "the 1998 Issuance of the 2018s," and refer to the series of bonds designated ISIN USP9395PAA95 as "the 2001 Issuance of the 2018s."  Plaintiffs refer to both series of bonds collectively as "the 13.625% 2018 Bonds" or "the 2018s."

The Trust is a current beneficial owner of $1,845,000 principal amount of the 1998 Issuance of the 2018s.  Ex. J at 3 (Jefferies Account Statements); Rule 56.1 Statement ¶ 8.  The Trust is also a current beneficial owner of $27,170,000 principal amount of the 2001 Issuance of the 2018s.  Ex. J at 3 (Jefferies Account Statements); Rule 56.1 Statement ¶ 20.  Pharo Macro Fund, Ltd. ("Pharo Macro") is a current beneficial owner of $1,500,000 principal amount of the 2001 Issuance of the 2018s.  Ex. K at 2 (Citigroup Account Statements); Rule 56.1 Statement ¶ 21.

The terms of the 1998 Issuance of the 2018s are set forth in the relevant Registered Global Security.  Ex. E (2018s – 1998 Issuance Registered Global Security); Rule 56.1 Statement ¶ 9. The terms of the 2001 Issuance of the 2018s, set forth in the relevant Regulation S Global Note, are materially identical.  Ex. G (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶ 22. The terms of the 2018s are also reflected in the prospectuses for each series of bonds.  Ex. D at S-3, S-4, 76–87 (2018s – 1998 Issuance Prospectus); Ex. F at 9–19 (2018s – 2001 Issuance Prospectus); Rule 56.1 Statement ¶¶ 11, 24.

The 13.625% 2018 Bonds accrue interest at a rate of 13.625% per year "until the principal hereof is paid or made available for payment."  *E.g.*, Ex. G at 2 (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶¶ 12–13, 25–26.  Half of the annual interest (6.8125%) is payable biannually on February 15 and August 15 of each year.  *E.g.*, Ex. G at 2, 7 (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶¶ 13, 26.

---

*Express Trust v. Bolivarian Republic of Venezuela*, 18-cv-11940 (S.D.N.Y.), will be cited herein as "*Casa Express*, ECF No. __."

2

The 13.625% 2018 Bonds matured on August 15, 2018, at which time the entire principal amount became due and payable. *E.g.*, Ex. G at 2, 7 (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶¶ 14, 27. Because Venezuela has not paid the principal amount of the 13.625% 2018 Bonds, Venezuela remains obligated to make biannual interest payments at a rate of 13.625% per year. Ex. G at 2 (2018s – 2001 Issuance Global Note); *see also id.* at 7 (if Venezuela "shall fail to redeem the Notes when due, interest shall continue to accrue beyond the due date until actual redemption"); Rule 56.1 Statement ¶¶ 13, 26, 28.

The third series of bonds at issue in this case, which is held only by the Funds, is designated ISIN USP97475AN08. Ex. I at 2 (2019s Global Bond); Rule 56.1 Statement ¶ 33. This series of bonds matured in October 2019 and accrues interest at a rate of 7.75% per year. Ex. I at 2, 8 (2019s Global Bond); Rule 56.1 Statement ¶¶ 39, 41. Plaintiffs refer to this series of bonds as "the 7.75% 2019 Bonds" or "the 2019s."

Pharo Macro is a current beneficial owner of $180,500,000 principal amount of the 7.75% 2019 Bonds.[2] Ex. K at 3 (Citigroup Account Statements); Rule 56.1 Statement ¶ 34. Pharo Gaia Fund, Ltd. ("Pharo Gaia") is a current beneficial owner of $114,000,000 principal amount of the 7.75% 2019 Bonds. Ex. K at 1 (Citigroup Account Statements); Rule 56.1 Statement ¶ 35.

The terms of the 7.75% 2019 Bonds are set forth in the Regulation S Global Bond and reflected in the prospectus. Ex. I (2019s Global Bond); Ex. H at 12–24 (2019s Prospectus); Rule 56.1 Statement ¶¶ 36, 38. The 7.75% 2019 Bonds accrue interest at a rate of 7.75% per year "until the principal hereof is paid or made available for payment." Ex. I at 2 (2019s Global Bond); Rule

---

[2]  Pharo Macro increased its position in the 7.75% 2019 Bonds after filing its complaint. Hanlon Decl. ¶ 6. This Court "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

56.1 Statement ¶¶ 39–40.  Half of the annual interest (3.875%) is payable biannually on April 13 and October 13 of each year.  Ex. I at 2, 8 (2019s Global Bond); Rule 56.1 Statement ¶ 40.

The 7.75% 2019 Bonds matured on October 13, 2019, at which time the entire principal amount became due and payable.  Ex. I at 2, 8 (2019s Global Bond); Rule 56.1 Statement ¶ 41. Because Venezuela has not redeemed the 7.75% 2019 Bonds, Venezuela remains obligated to make biannual interest payments at a rate of 7.75% per year.  Ex. I at 2 (2019s Global Bond); *see also id.* at 8 (if Venezuela "shall fail to redeem the Bonds when due, interest shall continue to accrue beyond the due date until actual redemption "); Rule 56.1 Statement ¶¶ 40, 42.

In addition to the terms of payment, the global note for each series of bonds lists the following "Events of Default" (among others):

> (a) the Republic fails to pay the principal amount of any Note when due and such failure continues for a period of 30 days; or

> (b) the Republic fails to pay interest or other amounts due on any Note when due, and such failure continues for a period of 30 days ….

Ex. G at 9 (2018s – 2001 Issuance Global Note); Ex. E at 10 (2018s – 1998 Issuance Registered Global Security); Ex. I at 10 (2019s Global Bond); Rule 56.1 Statement ¶¶ 17, 31.  The global notes for the 2018s further provide that if either of those events of default "shall have occurred and be continuing":

> Venezuela agrees to pay within 30 days after receipt of a demand therefor all reasonable and documented out-of-pocket expenses of the holders (including, without limitation, all reasonable counsel fees and court costs, stamp taxes, duties and fees) incurred in connection with any reasonable investigation of any such Event of Default or enforcement of the Securities.

Ex. G at 10 (2018s – 2001 Issuance Global Note); Ex. E at 11 (2018s – 1998 Issuance Registered Global Security) (same); Rule 56.1 Statement ¶¶ 18, 32.

Also in each of the global notes, Venezuela stated (in sum and substance) that the Bonds "are direct, unconditional, unsecured and general obligations of the Republic," and "pledge[d] its full faith and credit for the due and punctual payment of all amounts due." *E.g.*, Ex. G at 4 (2018s – 2001 Issuance Global Note); *see also id.* at 2 (Venezuela "promises to pay … the principal amount … on the Stated Maturity, and to pay interest thereon"); Rule 56.1 Statement ¶¶ 15–16, 29–30, 43–44. The global notes were each signed by authorized representatives of Venezuela. Ex. E at 2 (2018s – 1998 Issuance Registered Global Security); Ex. G at 3 (2018s – 2001 Issuance Global Note); Ex. I at 4 (2019s Global Bond); Rule 56.1 Statement ¶¶ 10, 23, 37.

### B.      The Fiscal Agency Agreements

Venezuela issued all three series of bonds pursuant to fiscal agency agreements. The 1998 Issuance of the 2018s was issued pursuant to a fiscal agency agreement dated August 6, 1998 ("the 1998 Fiscal Agency Agreement" or "1998 FAA"). Ex. A at 1 (1998 FAA); Rule 56.1 Statement ¶ 45. The 2001 Issuance of the 2018s and the 7.75% 2019 Bonds were issued pursuant to a fiscal agency agreement dated July 25, 2001 ("the 2001 Fiscal Agency Agreement" or "2001 FAA").[3] Ex. B at 1 (2001 FAA); Rule 56.1 Statement ¶¶ 50–51. Both fiscal agency agreements were signed by authorized representatives of Venezuela. Ex. A at 33 (1998 FAA); Ex. B at 31 (2001 FAA); Rule 56.1 Statement ¶¶ 47, 53. Because the terms of the 1998 and 2001 fiscal agency agreements are materially identical as they relate to this motion, Plaintiffs refer to them collectively as "the Fiscal Agency Agreements" or "the Agreements."

The Fiscal Agency Agreements reiterate that any bonds issued under them are "unsecured …, direct, unconditional and general obligations of the Republic," and that the "full faith and credit

---

[3] There are three amendments to the 2001 Fiscal Agency Agreement. Ex. C (2001 FAA Amendments). Those amendments are not relevant to this motion.

of the Republic will be pledged for the due and punctual payment of all Notes and for the due and timely performance of all obligations of the Republic." *E.g.* Ex. B § 1(a) (2001 FAA); Rule 56.1 Statement ¶¶ 48–49, 54–55.  The Agreements also detail certain features of the Bonds, explain how Venezuela will issue and pay the Bonds, and describe how Venezuela's obligations under the Bonds and the Agreements will be enforced.  *E.g.*, Ex. B §§ 1, 4, 14 (2001 FAA).

With respect to enforcement, the Fiscal Agency Agreements provide that Venezuela: (1) waives sovereign immunity to the fullest extent permitted by law, *e.g.*, Ex. B § 14(d) (2001 FAA); (2) consents to the personal jurisdiction of this Court and the Supreme Court of the State of New York, County of New York, *id.* § 14(a); (3) consents to service of process through its agent, the Consul General of the Republic of Venezuela in New York, *id.* § 14(b); and (4) agrees that the Fiscal Agency Agreements and the Bonds will be governed by and interpreted in accordance with New York law, *id.* at § 12; *id.* at A-4; *see also* Ex. E § 12 (2018s – 1998 Issuance Registered Global Security); Ex. G at 3, 13–14 (2018s – 2001 Issuance Global Note);  Ex. I at 3 (2019s Global Bond).

### C.     Venezuela's Breaches

Starting in October 2017, Venezuela began to cease meeting certain sovereign debt obligations, including its obligations under the Bonds and the Fiscal Agency Agreements.  Hanlon Decl. ¶ 15; Rule 56.1 Statement ¶ 101.  On the 13.625% 2018 Bonds, Venezuela failed to make two contractually required pre-maturity interest payments—on February 15, 2018 and August 15, 2018—and failed to pay the entire principal amount when those bonds matured on August 15, 2018.  Hanlon Decl. ¶¶ 8–11; Gamardo Medina Decl. ¶¶ 8–11, 13–16; Rule 56.1 Statement ¶¶ 56–63, 71–78, 86–93.  In addition, Venezuela has so far failed to make two post-maturity interest payments on the 13.625% 2018 Bonds, on February 15, 2019 and August 15, 2019.  Hanlon Decl. ¶¶ 12–13; Gamardo Medina Decl. ¶¶ 8–9, 13–14; Rule 56.1 Statement ¶¶ 64–69, 79–84, 94–99.

On the 7.75% 2019 Bonds, Venezuela failed to make five contractually required pre-maturity interest payments—on October 13, 2017, April 13, 2018, October 13, 2018, April 13, 2019, and October 13, 2019—and failed to pay the entire principal amount when those bonds matured on October 13, 2019.  Hanlon Decl. ¶¶ 15–18, 20–23; Rule 56.1 Statement ¶¶ 101–117, 119–135.

### D.  **Plaintiffs' Lawsuits**

Casa Express filed a breach-of-contract action against Venezuela in this Court on December 18, 2018.  *Casa Express*, ECF No. 1.  Less than a month later, on January 11, 2019, the Funds brought their own breach-of-contract action against Venezuela in the Supreme Court of the State of New York, County of New York.  Ex. L (Pharo Complaint).

On January 16, 2019, the Funds duly served Venezuela's Consul General in New York, its appointed agent for service of process under the 2001 Fiscal Agency Agreement, in accordance with Section 1608(a)(1) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a)(1).  Ex. M (Pharo Affirmation of Service);  Ex. N (Pharo Affidavit of Service); Ex. B § 14(b) (2001 FAA).  Casa Express duly served Venezuela's Consul General in New York on January 23, 2019.  *Casa Express*, ECF No. 11 (Casa Express Affidavit of Service).  Under the FSIA, Venezuela had until late March to file an answer or other responsive pleading in both cases. 28 U.S.C. § 1608(d) (providing a foreign state 60 days from date of service to respond to complaint).

On April 8, 2019, as the Funds were preparing to file a motion for default judgment in state court, Venezuela removed the case to this Court and designated the case as related to the Casa Express case.  ECF Nos. 1, 3.  Two days later, and nearly two weeks after Casa Express had obtained a certificate of default, Venezuela appeared in the Casa Express case, and the parties agreed to vacate the certificate of default.  *Casa Express*, ECF Nos. 25, 26, 32.

From this point, Plaintiffs' cases proceeded in parallel.  Although Venezuela's deadline for responding to the complaint had already passed, Plaintiffs agreed to stipulations giving Venezuela until June 21, 2019 to file an answer or responsive pleading.  ECF No. 11; *Casa Express*, ECF No. 32.  The stipulations provided that, if Venezuela intended to "make a motion at that time," it had to begin the pre-motion letter process required by this Court's Individual Practices "on or before May 31, 2019."  *E.g.*, ECF No. 11.

Venezuela answered Plaintiffs' complaints on June 21, 2019.  ECF No. 16; *Casa Express*, ECF No. 36.  In its answer, Venezuela asserted the "affirmative defenses" of impossibility, state of necessity, and international comity.  ECF No. 16 at 5–9; *Casa Express*, ECF No. 36 at 9–13.  That same day, notwithstanding its commitment to notify Plaintiffs in May if it intended to file any motion, Venezuela stated its intent to file a motion asking the Court "to abstain by staying the case or dismissing without prejudice on the three bases" identified in its answer.  ECF No. 17 at 2; *Casa Express*, ECF No. 37 at 2–5.  Plaintiffs asked that the cases be allowed to proceed directly to summary judgment.  *E.g.*, ECF No. 17 at 2.

On July 8, 2019, after an initial pretrial scheduling conference and a round of letter briefs (*e.g.*, ECF Nos. 22, 23), this Court entered its case management plan and scheduling order.  ECF No. 26; *Casa Express*, ECF Nos. 45, 46.  The Court ordered four months of discovery, required Plaintiffs to file a consolidated motion for summary judgment by December 5, 2019, and ordered Venezuela to file any cross-motion for a stay along with its opposition to Plaintiffs' motion for summary judgment.  *E.g.*, ECF No. 26 at 2.

During discovery, Venezuela filed an amended answer in both cases withdrawing its affirmative defenses.  ECF No. 32-1; *Casa Express*, ECF No. 53-1.  Venezuela explained that "the

substance of the defenses set forth in the Answer is directed to the Republic's anticipated motion for a temporary stay and not to a final judgment on the merits." *E.g.*, ECF No. 32 at 1.

## ARGUMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiffs are entitled to summary judgment. The undisputed evidence shows that Venezuela has waived its sovereign immunity, has failed to meet its contractual obligations to Plaintiffs under the Bonds, and has no defenses. Prompt entry of judgment is necessary to ensure that Plaintiffs are not further prejudiced by other creditors who continue to obtain and actively enforce judgments against Venezuela.

## I.     Venezuela Has Waived Sovereign Immunity

The FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. Section 1605 of the FSIA provides that a "foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case … in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). In Section 14(d) of the Fiscal Agency Agreements, Venezuela explicitly waived its sovereign immunity for cases brought in this Court relating to the Bonds:

> To the extent that the Issuer [Venezuela] … shall be entitled, with respect to any **Related Proceeding** at any time brought against the Issuer … in any jurisdiction in which any **Specified Court** is located … to any immunity from suit, from the jurisdiction of any such court … , and to the extent that in any such jurisdiction there shall be attributed such an immunity, **the Issuer irrevocably agrees not to claim and irrevocably waives such immunity to the fullest extent permitted by the laws of such jurisdiction** (including, without limitation, the Foreign Sovereign Immunities Act of 1976 of the United States) ….

Ex. B § 14(d) (2001 FAA) (emphases added); Ex. A § 14(d) (1998 FAA); Rule 56.1 Statement ¶ 145.

Plaintiffs' suits on the Bonds are Related Proceedings, as defined by the Fiscal Agency Agreements, because they are each "suit[s], action[s] or proceeding[s] against [Venezuela] or its properties, assets or revenues with respect to this Agreement [or] any Note or coupon appertaining thereto." *E.g.*, Ex. B § 14(a) (2001 FAA); Rule 56.1 Statement ¶¶ 146–147. Both this Court, where the Trust filed suit, and "the Supreme Court of the State of New York, County of New York," where the Funds originally filed suit, are Specified Courts as defined by the Fiscal Agency Agreements. *E.g.*, Ex. B § 14(a) (2001 FAA); Rule 56.1 Statement ¶¶ 148–149. Thus, because Venezuela has "irrevocably agree[d] not to claim and irrevocably waive[d]" sovereign immunity in these suits, Ex. B § 14(d) (2001 FAA), the FSIA poses no barrier to this Court's exercise of jurisdiction over Plaintiffs' suits. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 203 & n.1 (2d Cir. 2012) (Argentina waived sovereign immunity using similar language in bond indenture agreements).

## II.   Undisputed Evidence Shows That Venezuela Breached Its Contractual Obligations Under The Bonds and the Fiscal Agency Agreements

Plaintiffs are entitled to judgment on their breach-of-contract claims for nonpayment of the Bonds because: (1) Plaintiffs have contractual standing to bring these claims, (2) Venezuela has breached its obligations under the Bonds and the Fiscal Agency Agreements, and (3) Venezuela has no defenses.

*First*, Plaintiffs have contractual standing to bring these claims against Venezuela because Cede & Co.—the nominee of the Depository Trust Company and the entity acting as the Bonds' owner and holder of record—has provided written authorization to Plaintiffs to file suit. *Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242, 243 (2d Cir. 2005) (Cede & Co. letters provide contractual standing to sue); *see also* Ex. O (Trust's Cede Letter for 1998 Issuance of 2018s); Ex. P (Trust's Cede Letter for 2001 Issuance of 2018s); Ex. Q (Pharo Macro's

Cede Letter for 2001 Issuance of 2018s); Ex. R (Pharo Macro's Cede Letter for 2019s); Ex. S

(Pharo Gaia's Cede Letter for 2019s); Rule 56.1 Statement ¶¶ 137–144.

*Second*, Venezuela is liable for breach of contract.  Under New York law, which applies

under the terms of the Fiscal Agency Agreements and the Bonds (*supra* at 6), the "essential

elements of a cause of action to recover damages for breach of contract are (1) the existence of a

contract, (2) the plaintiff's performance pursuant to the contract, (3) the defendant's breach of its

contractual obligations, and (4) damages resulting from the breach."  *Junger v. John V. Dinan*

*Assocs., Inc.*, 164 A.D.3d 1428, 1430 (2d Dept 2018).  It is beyond dispute that the Bonds and the

Fiscal Agency Agreements are valid contracts and that Plaintiffs have met all of their obligations.

The following undisputed facts further show that Venezuela has breached its contractual

obligations and that Plaintiffs are entitled to damages:

**1998 Issuance of the 2018s – The Trust:**

- The Trust is a current beneficial owner of $1,845,000 principal amount of the 1998 Issuance of the 2018s.  Ex. J at 3 (Jefferies Account Statements); Gamardo Medina Decl. ¶ 6; Rule 56.1 Statement ¶ 8.

- The Registered Global Security for the 1998 Issuance of the 2018s sets forth the terms of the 1998 Issuance of the 2018s.  Ex. E (2018s – 1998 Issuance Registered Global Security); Rule 56.1 Statement ¶ 9.

  o The bonds accrue interest on February 15 and August 15 of each year at a rate of 13.625% per year (or 6.8125% per payment).  Ex. E at 1 (2018s – 1998 Issuance Registered Global Security); Rule 56.1 Statement ¶¶ 12–13.

  o The bonds matured on August 15, 2018, at which time the entire principal amount became due and payable.  Ex. E at 1 (2018s – 1998 Issuance Registered Global Security); Rule 56.1 Statement ¶ 14.

  o Because Venezuela has not repaid the principal amount, the bonds continue to accrue interest at a rate of 13.625% per year, payable on February 15 and August 15 of each year.  Ex. E at 1 (2018s – 1998 Issuance Registered Global Security); Rule 56.1 Statement ¶ 13.

- Venezuela failed to make interest payments of 6.8125% on February 15, 2018 and August 15, 2018, as required by the terms of the 1998 Issuance of the 2018s.  Gamardo

Medina Decl. ¶ 8; Ex. E at 1 (2018s – 1998 Issuance Registered Global Security); Rule 56.1 Statement ¶¶ 56–61.

- o Venezuela has yet to make those interest payments.  Gamardo Medina Decl. ¶ 9; Rule 56.1 Statement ¶¶ 58, 61.

- Venezuela failed to pay the principal amount on the 1998 Issuance of the 2018s, which became due and payable on August 15, 2018.  Gamardo Medina Decl. ¶ 10; Ex. E at 1 (2018s – 1998 Issuance Registered Global Security); Rule 56.1 Statement ¶ 62–63.

- o Venezuela has yet to make those principal payments.  Gamardo Medina Decl. ¶ 11; Rule 56.1 Statement ¶ 63.

- As a result of Venezuela's failure to pay the entire principal amount when the bonds matured, biannual interest payments on the bonds continue to accrue at a rate of 13.625% per year.  Ex. E at 1 (2018s – 1998 Issuance Registered Global Security); Rule 56.1 Statement ¶ 13.

- Venezuela failed to make post-maturity interest payments of 6.8125% on February 15, 2019 and August 15, 2019.  Gamardo Medina Decl. ¶ 8; Rule 56.1 Statement ¶¶ 64–69.

- o Venezuela has yet to make those interest payments.  Gamardo Medina Decl. ¶ 9; Rule 56.1 Statement ¶¶ 66, 69.

- As a result of Venezuela's breaches, the Trust is entitled to damages in the amount discussed below.  Gamardo Medina Decl. ¶ 12; Rule 56.1 Statement ¶ 70.

**2001 Issuance of the 2018s – The Trust and Pharo Macro:**

- The Trust is a current beneficial owner of $27,170,000 principal amount of the 2001 Issuance of the 2018s.  Ex. J at 3 (Jefferies Account Statements); Gamardo Medina Decl. ¶ 7; Rule 56.1 Statement ¶ 20.

- Pharo Macro is a current beneficial owner of $1,500,000 principal amount of the 2001 Issuance of the 2018s.  Ex. K at 2 (Citigroup Account Statements); Hanlon Decl. ¶ 5; Rule 56.1 Statement ¶ 21.

- The Regulation S Global Note sets forth the terms of the 2001 Issuance of the 2018s. Ex. G (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶ 22.

- o The bonds accrue interest on February 15 and August 15 of each year at a rate of 13.625% per year (or 6.8125% per payment).  Ex. G at 2, 7 (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶¶ 25–26.

- o The bonds matured on August 15, 2018, at which time the entire principal amount became due and payable.  Ex. G at 2, 7 (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶ 27.

- o Because Venezuela has not repaid the principal amount, the bonds continue to accrue interest at a rate of 13.625% per year, payable on February 15 and August 15 of each year.  Ex. G at 2, 7 (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶¶ 26, 28.

- Venezuela failed to make interest payments of 6.8125% on February 15, 2018 and August 15, 2018, as required by the terms of the 2001 Issuance of the 2018s.  Hanlon Decl. ¶ 8; Gamardo Medina Decl. ¶ 13; Ex. G (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶¶ 71–76, 86–91.

  - o Venezuela has yet to make those interest payments.  Hanlon Decl. ¶ 9; Gamardo Medina Decl. ¶ 14; Rule 56.1 Statement ¶¶ 73, 76, 88, 91.

- Venezuela failed to pay the principal amount on the 2001 Issuance of the 2018s, which became due and payable on August 15, 2018.  Hanlon Decl. ¶ 10; Gamardo Medina Decl. ¶ 15; Ex. G at 2, 7 (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶¶ 77–78, 92–93.

  - o Venezuela has yet to make those principal payments.  Hanlon Decl. ¶ 11; Gamardo Medina Decl. ¶ 16; Rule 56.1 Statement ¶¶ 78, 93.

- As a result of Venezuela's failure to pay the entire principal amount when the bonds matured, biannual interest payments on the bonds continue to accrue at a rate of 13.625% per year.  Ex. G at 2, 7 (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶¶ 26, 28.

- Venezuela failed to make post-maturity interest payments of 6.8125% on February 15, 2019 and August 15, 2019.  Hanlon Decl. ¶ 12; Gamardo Medina Decl. ¶ 13; Rule 56.1 Statement ¶¶ 79–84, 94–99.

  - o Venezuela has yet to make those interest payments.  Hanlon Decl. ¶ 13; Gamardo Medina Decl. ¶ 14; Rule 56.1 Statement ¶¶ 81, 84, 96, 99.

- As a result of Venezuela's breaches, the Trust and Pharo Macro are entitled to damages in the amounts discussed below.  Hanlon Decl. ¶ 14; Gamardo Medina Decl. ¶ 17; Rule 56.1 Statement ¶¶ 85, 100.

**7.75% 2019 Bonds – Pharo Macro and Pharo Gaia:**

- Pharo Macro is a current beneficial owner of $180,500,000 principal amount of the 7.75% 2019 Bonds.  Ex. K at 3 (Citigroup Account Statements); Hanlon Decl. ¶ 6; Rule 56.1 Statement ¶ 34.

- Pharo Gaia is a current beneficial owner of $114,000,000 principal amount of the 7.75% 2019 Bonds.  Ex. K at 1 (Citigroup Account Statements); Hanlon Decl. ¶ 7; Rule 56.1 Statement ¶ 35.

- The Regulation S Global Note sets forth the terms of the 7.75% 2019 Bonds.  Ex. I (2019s Global Bond); Rule 56.1 Statement ¶ 36.

  o The bonds accrue interest on April 13 and October 13 of each year at a rate of 7.75% per year (or 3.875% per payment).  Ex. I at 2, 8 (2019s Global Bond); Rule 56.1 Statement ¶¶ 39–40.

  o The bonds matured on October 13, 2019, at which time the entire principal amount became due and payable.  Ex. I at 2, 8 (2019s Global Bond); Rule 56.1 Statement ¶ 41.

  o Because Venezuela has not repaid the principal amount, the bonds continue to accrue interest at a rate of 7.75% per year, payable on April 13 and October 13 of each year.  Ex. I at 2, 8 (2019s Global Bond); Rule 56.1 Statement ¶¶ 40, 42.

- Venezuela failed to make interest payments of 3.875% on October 13, 2017, April 13, 2018, October 13, 2018, April 13, 2019, and October 13, 2019, as required by the terms of the 7.75% 2019 Bonds.  Hanlon Decl. ¶¶ 15, 20; Ex. I at 2, 8 (2019s Global Bond); Rule 56.1 Statement ¶¶ 101–115, 119–133.

  o Venezuela has yet to make those interest payments.  Hanlon Decl. ¶¶ 16, 20; Rule 56.1 Statement ¶¶ 103, 106, 109, 112, 115, 121, 124, 127, 130, 133.

- Venezuela failed to pay the principal amount on the 7.75% 2019 Bonds, which became due and payable on October 13, 2019.  Hanlon Decl. ¶¶ 17, 22; Ex. I at 2, 8 (2019s Global Bond); Rule 56.1 Statement ¶¶ 116–117, 134–135.

  o Venezuela has yet to make those principal payments.  Hanlon Decl. ¶¶ 18, 23; Rule 56.1 Statement ¶¶ 117, 135.

- As a result of Venezuela's failure to pay the entire principal amount when the 7.75% 2019 Bonds matured, biannual interest payments on the bonds continue to accrue at a rate of 7.75% per year.  Ex. I at 2, 8 (2019s Global Bond); Rule 56.1 Statement ¶¶ 40, 42.

- As a result of Venezuela's breaches, Pharo Macro and Pharo Gaia are entitled to damages in the amounts discussed below.  Hanlon Decl. ¶¶ 19, 24; Rule 56.1 Statement ¶¶ 118, 136.

*Finally*, Venezuela has no defenses to jurisdiction, liability, or damages.  Venezuela's amended answers in these cases withdrew its affirmative defenses because the "substance of the defenses … is directed to the Republic's anticipated motion for a temporary stay and not to a final judgment on the merits."  *E.g.*, ECF No. 32 at 1.  Venezuela also acknowledged in its initial

disclosures that it "is unaware at this time of potential defenses, setoffs, recoupments or counterclaims going to the merits and specific to Plaintiffs."  Ex. T at 1–2 (Venezuela's Initial Disclosures to the Funds); Ex. U at 1–2 (Venezuela's Initial Disclosures to the Trust).

Judgment in favor of Plaintiffs is therefore warranted on the undisputed facts.

## III.   Plaintiffs Are Entitled To Damages

As a result of Venezuela's contract breaches, Plaintiffs are entitled to four categories of damages: missed principal payments, missed interest payments, prejudgment interest, and attorneys' fees and costs.

*First*, Plaintiffs are entitled to missed principal payments.  Principal on the 13.625% 2018 Bonds came due on August 15, 2018.  Principal on the 7.75% 2019 Bonds came due on October 13, 2019.

*Second*, Plaintiffs are entitled to interest on principal.  That includes pre-maturity biannual interest payments that already have accrued.  It also includes post-maturity biannual interest payments that already have accrued or may accrue before the date of judgment.  Venezuela agreed in the global note governing each series of bonds "to pay interest … at the [applicable rate] until the principal hereof is paid or made available for payment."  Ex. E at 1 (2018s – 1998 Issuance Registered Global Security); Ex. G at 2 (2018s – 2001 Issuance Global Note); Ex. I at 2 (2019s Global Bond); *see also* Ex. I at 8 (2019s Global Bond) (if Venezuela "shall fail to redeem the Bonds when due, interest shall continue to accrue beyond the due date until actual redemption of the Bonds"); Ex. G at 7 (2018s – 2001 Issuance Global Note) (same); Rule 56.1 Statement ¶¶ 13, 26, 28, 40, 42.

Thus, because Venezuela has not paid the principal owed on the Bonds upon their maturity, Venezuela remains obligated to make biannual interest payments after maturity at the same rates and on the same dates that it made interest payments before maturity.  *See NML Capital v. Republic*

*of Argentina*, 17 N.Y.3d 250, 259–62 (2011).  In addition, to the extent the date of final judgment falls between two biannual interest payments, Plaintiffs are entitled to interest that has accrued at the contract rate up to the judgment date.[4]

*Third*, Plaintiffs are entitled to statutory prejudgment interest on all missed interest payments.  Under New York law, which applies under the terms of the Fiscal Agency Agreements and the Bonds (*supra* at 6), prejudgment interest accrues at the statutory rate of 9% (CPLR 5004) for missed pre-maturity and post-maturity interest payments.  *See NML Capital*, 17 N.Y.3d at 265–67 (statutory prejudgment interest accrues for post-maturity interest payments); *see also Capital Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 296 (2d Cir. 2009) (applying New York's statutory prejudgment interest rate); *NML Capital v. Republic of Argentina*, 435 F. App'x 41, 42 (2d Cir. 2011) (same).

Prejudgment interest runs "from the date the [interest] payment[s] became due" until the date of judgment.  *NML Capital*, 17 N.Y.3d at 258; *see also* CPLR 5001.  Plaintiffs do not claim statutory prejudgment interest on missed principal payments.  That is because, as discussed, the Bonds substitute post-maturity biannual interest payments for statutory prejudgment interest.

*Finally*, Plaintiffs are entitled to attorneys' fees and costs.  Venezuela's failure to pay interest and principal on the Bonds for more than 30 days constitutes an "Event of Default" under the global notes.  *E.g.*, Ex. G at 9 (2018s – 2001 Issuance Global Note); Rule 56.1 Statement ¶¶ 17, 31.  As a result, as beneficial owners of the 13.625% 2018 Bonds, Plaintiffs are entitled to "all reasonable and documented out-of-pocket expenses … (including, without limitation, all

---

[4]  According to the terms of the Bonds, any interest that accrues between two interest payments "will be calculated on the basis of a 360-day year, consisting of twelve 30-day months."  Ex. I at 8 (2019s Global Bond); Ex. E at 1 (2018s – 1998 Issuance Registered Global Security); Ex. G at 7 (2018s – 2001 Issuance Global Note).

reasonable counsel fees and court costs, stamp taxes, duties and fees) incurred in connection with any reasonable investigation of any such Event of Default or enforcement of the Securities." Ex. G at 10 (2018s – 2001 Issuance Global Note); Ex. E at 11 (2018s – 1998 Issuance Registered Global Security) (same); Rule 56.1 Statement ¶¶ 18, 32.

Plaintiffs therefore request damages as follows:

**The Trust – 1998 Issuance of the 2018s:**

Principal Payments:  $1,845,000 in missed principal payments that accrued on August 15, 2018.  Gamardo Medina Decl. ¶ 12; Rule 56.1 Statement ¶ 70.

Interest on Principal: $502,762.50 for the four missed biannual interest payments on February 15, 2018, August 15, 2018, February 15, 2019, and August 15, 2019, plus any further post-maturity interest payments that accrue by the date of judgment, plus any interest that accrues between the last interest payment and the date of judgment. Gamardo Medina Decl. ¶ 12; Rule 56.1 Statement ¶ 70.

Prejudgment Interest:  Prejudgment interest on missed interest payments that accrues at the 9% statutory rate from the date of each missed interest payment.

Attorneys' fees:  In an amount to be proved after the entry of judgment.

**The Trust – 2001 Issuance of the 2018s:**

Principal Payments:  $27,170,000 in missed principal payments that accrued on August 15, 2018.  Gamardo Medina Decl. ¶ 17; Rule 56.1 Statement ¶ 85.

Interest on Principal: $7,403,825 for the four missed biannual interest payments on February 15, 2018, August 15, 2018, February 15, 2019, and August 15, 2019, plus any further post-maturity interest payments that accrue by the date of judgment, plus any interest that accrues between the last interest payment and the date of judgment. Gamardo Medina Decl. ¶ 17; Rule 56.1 Statement ¶ 85.

Prejudgment Interest:  Prejudgment interest on missed interest payments that accrues at the 9% statutory rate from the date of each missed interest payment.

Attorneys' fees:  In an amount to be proved after the entry of judgment.

**Pharo Macro – 2001 Issuance of the 2018s:**

Principal Payments:  $1,500,000 in missed principal payments that accrued on August 15, 2018.  Hanlon Decl. ¶ 14; Rule 56.1 Statement ¶ 100.

17

Interest on Principal:  $408,750 for the four missed biannual interest payments on February 15, 2018, August 15, 2018, February 15, 2019, and August 15, 2019, plus any further post-maturity interest payments that accrue by the date of judgment, plus any interest that accrues between the last interest payment and the date of judgment. Hanlon Decl. ¶ 14; Rule 56.1 Statement ¶ 100.

Prejudgment Interest:  Prejudgment interest on missed interest payments that accrues at the 9% statutory rate from the date of each missed interest payment.

Attorneys' fees:  In an amount to be proved after the entry of judgment.

**Pharo Macro – 7.75% 2019 Bonds:**

Principal Payments:  $180,500,000 in missed principal payments that accrued on October 13, 2019.  Hanlon Decl. ¶ 19; Rule 56.1 Statement ¶ 118.

Interest on Principal:  $34,971,875 for the five missed interest payments on October 13, 2017, April 13, 2018, October 13, 2018, April 13, 2019, and October 13, 2019, plus any further interest payments that accrue by the date of judgment, plus any interest that accrues between the last interest payment and the date of judgment.  Hanlon Decl. ¶ 19; Rule 56.1 Statement ¶ 118.

Prejudgment Interest:  Prejudgment interest on missed interest payments that accrues at the 9% statutory rate from the date of each missed interest payment.

**Pharo Gaia – 7.75% 2019 Bonds:**

Principal Payments:  $114,000,000 in missed principal payments that accrued on October 13, 2019.  Hanlon Decl. ¶ 24; Rule 56.1 Statement ¶ 136.

Interest Payments:  $22,087,500 for the five missed interest payments on October 13, 2017, April 13, 2018, October 13, 2018, April 13, 2019, and October 13, 2019, plus any further interest payments that accrue by the date of judgment, plus any interest that accrues between the last interest payment and the date of judgment.  Hanlon Decl. ¶ 24; Rule 56.1 Statement ¶ 136.

Prejudgment Interest:  Prejudgment interest on missed interest payments that accrues at the 9% statutory rate from the date of each missed interest payment.

*          *          *

In sum, Plaintiffs are entitled to damages in the following amounts:  The Trust is entitled to $36,921,587.50, plus any interest payments that may accrue and remain unpaid prior to the date of judgment, along with prejudgment interest and attorneys' fees.  Pharo Macro is entitled to $217,380,625, plus any interest payments that may accrue and remain unpaid prior to the date of

18

judgment, along with prejudgment interest and attorneys' fees.   Pharo Gaia is entitled to $136,087,500, plus any interest payments that may accrue and remain unpaid prior to the date of judgment, along with prejudgment interest.[5]

## IV.   Plaintiffs Are Entitled to Postjudgment Interest

Once the Court enters judgment against Venezuela, Plaintiffs will be entitled to statutory postjudgment interest on the entire judgment amount.   Postjudgment interest, unlike prejudgment interest, is governed by federal statute.   *See* 28 U.S.C. § 1961(a); *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109 (2d Cir. 2013); *see also NML Capital*, 435 F. App'x at 44 (directing the application of 28 U.S.C. § 1961(a)).   Postjudgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."   28 U.S.C. § 1961(a).

## V.   The Court Should Enter Judgment Promptly

Any additional delay in the entry of judgment will prejudice Plaintiffs by preventing them from exercising their legal remedies while other creditors continue to close in on Venezuela's known assets.   There are dozens of active cases that creditors have brought against Venezuela and its state-owned oil company, PDVSA.   ECF No. 23-1.   Many of these cases have continued to press forward while Plaintiffs' cases have been on hold.   For example, shortly after this Court ordered discovery, the Third Circuit held that Crystallex could collect on its $1.4 billion judgment by attaching shares of the holding company that controls Citgo—Venezuela's crown-jewel asset. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 132 (3d Cir. 2019).

---

[5]   If the Court grants summary judgment on liability in favor of Plaintiffs, Plaintiffs are willing to meet and confer with Venezuela to agree upon the amount of interest that should be awarded in the final judgments.

More recently, in *OI European Group B.V. v. Bolivarian Republic of Venezuela*, a district court granted a creditor leave to register a $400 million judgment against Venezuela, and to seek to attach and execute that judgment.  16-cv-1533 (D.D.C. Nov. 1, 2019), ECF No. 101.  The court rejected Venezuela's request for a stay of proceedings, concluding that "it may take years to stabilize the country and fully transition to another political regime, and it would not be appropriate or fair to the plaintiff to stay the case indefinitely until that transition is completed."  *Id.* at 8.

Meanwhile, Venezuela's government in exile, headed by Juan Guaidó, has not hesitated to seek prompt resolution of *its* claims against creditors in federal court.  *See Petróleos de Venezuela, S.A. et al. v. MUFG Union Bank, N.A. et al.*, 19-cv-10023 (S.D.N.Y) (lawsuit by Guaidó-appointed PDVSA board to declare void certain PDVSA bonds); *see also* Reuters, *Allies of Venezuela's Guaido file lawsuit over PDVSA 2020 bond* (Oct. 29, 2019), https://reut.rs/2XrUKZm.

Plaintiffs' claims should not be left behind while the claims of other creditors and Venezuela are allowed to proceed apace.

## CONCLUSION

Plaintiffs respectfully request that this Court grant their consolidated motion for summary judgment and enter judgment against Venezuela in the following amounts:

For the Funds: $353,468,125, plus any interest payments that may accrue and remain unpaid prior to the date of judgment, along with prejudgment interest, attorneys' fees, and postjudgment interest.

For the Trust: $36,921,587.50, plus any interest payments that may accrue and remain unpaid prior to the date of judgment, along with prejudgment interest, attorneys' fees, and postjudgment interest.

Dated:  December 5, 2019                              Respectfully submitted,

Washington, DC and New York, NY

/s/ Jeremy L. Wallison                               /s/ Matthew D. McGill
Jeremy L. Wallison, Esq.                             Matthew D. McGill
jw@wallisonllp.com                                   MMcGill@gibsondunn.com
20 East 69th Street, Suite 5A                        1050 Connecticut Avenue, N.W.
New York, NY  10021                                  Washington, D.C.  20036
(212) 292-1011                                       (202) 887-3680

Counsel for Casa Express Corp,                       Anne M. Champion
as Trustee of Casa Express Trust                     AChampion@gibsondunn.com
                                                     200 Park Avenue
                                                     New York, N.Y.  10166
                                                     (212) 351-4000

                                                     Counsel for Plaintiffs Pharo Gaia
                                                     Fund, Ltd. and Pharo Macro Fund,
                                                     Ltd.