# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHARO GAIA FUND, LTD. and PHARO MACRO FUND, LTD.,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 19-cv-3123 (AT)<br>Related to 18-cv-11940 (AT) |
| CASA EXPRESS CORP, as Trustee of CASA EXPRESS TRUST,<br><br>    Plaintiff,<br><br>  v.<br><br>THE BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 18-cv-11940 (AT)<br>Related to 19-cv-3123 (AT) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO VENEZUELA'S CROSS-MOTION TO STAY

WALLISON & WALLISON LLP
Jeremy L. Wallison, Esq.
jw@wallisonllp.com
20 East 69th Street, Suite 5A
New York, NY 10021
(212) 292-1011

*Counsel for Casa Express Corp,
as Trustee of Casa Express Trust*

GIBSON, DUNN & CRUTCHER LLP
Matthew D. McGill
MMcGill@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 887-3680

Anne M. Champion
AChampion@gibsondunn.com
200 Park Avenue
New York, NY 10166
(212) 351-4000

*Counsel for Plaintiffs Pharo Gaia Fund,
Ltd. and Pharo Macro Fund, Ltd.*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

I.    These Cases Should Not Be Stayed ............................................................ 2

    A.    This Court Should Not Stay These Cases Under Its Inherent Powers .................. 3

    B.    Venezuela Is Not Entitled To A Stay As A Matter Of International Comity Or International Law ................................................................ 11

    1.    International Comity Does Not Support A Stay .................................. 12

    2.    International Law Does Not Support A Stay ...................................... 15

    3.    Impossibility Is Not A Defense ........................................................ 19

II.    Plaintiffs Are Entitled To Prejudgment Interest Under New York Law ...................... 20

    A.    The Parties' Contracts And The FSIA Require The Application Of New York's Prejudgment Interest Statute ................................................ 21

    B.    The Court Should Apply New York's Statutory Rate Under Federal Prejudgment Interest Principles ............................................................ 23

III.    There Is No Need To Establish Fraud-Prevention Mechanisms In These Cases .......... 26

CONCLUSION ................................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*,
    244 N.E.2d 37 (N.Y. 1968) ................................................................. 20

*ACLI Investments Ltd. et al. v. Bolivarian Republic of Venezuela*,
    No. 19-CV-9014 (S.D.N.Y.) .................................................................. 6

*Allied Bank Int'l v. Banco Credito Agricola de Cartago*,
    757 F.2d 516 (2d Cir. 1985) ............................................................ 13, 14

*Amoco Prod. Co. v. Heimann*,
    904 F.2d 1405 (10th Cir. 1990) ............................................................ 27

*Argentine Necessity Case*,
    Bundesverfassungsgerichts [BVerfG] [Federal Constitutional Court], May 8,
    2007, 138 I.L.R. 1 ......................................................................... 18

*Bank Markazi v. Peterson*,
    136 S. Ct. 1310 (2016) ..................................................................... 15

*Bank of New York v. Yugoimport*,
    745 F.3d 599 (2d Cir. 2014) ................................................................ 21

*Barkanic v. Gen. Admin. of Civil Aviation of the People's Republic of China*,
    923 F.2d 957 (2d Cir. 1991) ............................................................ 22, 23

*Canada Southern Railway Co. v. Gebhard*,
    109 U.S. 527 (1883) ........................................................................ 12

*Capital Ventures Int'l v. Republic of Argentina*,
    552 F.3d 289 (2d Cir. 2009) ................................................................ 22

*CapitalKeys, LLC v. Democratic Republic of Congo*,
    278 F. Supp. 3d 265 (D.D.C. 2017) ........................................................ 22

*Cappiello v. ICD Publ'ns, Inc.*,
    720 F.3d 109 (2d Cir. 2013) ................................................................ 23

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948) ........................................................................ 15

*Clinton v. Jones*,
    520 U.S. 681 (1997) ......................................................................... 3

TABLE OF AUTHORITIES (cont.)

Page(s)

*Commercial Union Assurance Co., plc v. Milken*,
   17 F.3d 608 (2d Cir. 1994)...................................................................25

*Comparelli v. Republica Bolivariana de Venezuela*,
   No. 14-CV-24414 (S.D. Fla. Sept. 28, 2019) ..........................................8

*Cont'l Cas. Co. v. Argentine Republic*,
   ICSID Case No. ARB/03/9 (Sept. 5, 2008) ..........................................18

*Contrarian Capital Mgmt. v. Bolivarian Republic of Venezuela*,
   No. 19-CV-11018 (S.D.N.Y.) ...............................................................6

*Cornfeld v. Inv'rs Overseas Servs., Ltd.*,
   471 F. Supp. 1255 (S.D.N.Y. 1979).....................................................13

*In re Crazy Eddie Sec. Litig.*,
   948 F. Supp. 1154 (E.D.N.Y. 1996) .....................................................23

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   No. 17-MC-151 (D. Del.) ...............................................................6, 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   333 F. Supp. 3d 380 (D. Del. 2018).......................................................7

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019).................................................................7

*Crystallex Int'l Corp. v. PDV Holding Inc.*,
   No. 15-CV-1082, 2019 WL 6785504 (D. Del. Dec. 12, 2019) ................7

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*,
   685 F.2d 1284 (11th Cir. 1982) ............................................................3

*Cunard S.S. Co. v. Salen Reefer Servs. AB*,
   773 F.2d 452 (2d Cir. 1985).................................................................13

*Dames & Moore v. Regan*,
   453 U.S. 654 (1981).............................................................................11

*Deng v. 278 Gramercy Park Grp. LLC*,
   No. 12-CV-7803, 2014 WL 1016853 (S.D.N.Y. Mar. 14, 2014)...........23

*Deutsche Bank Tr. Co. Americas v. Am. Gen. Life Ins. Co.*,
   No. 15-CV-3869, 2015 WL 5178408 (S.D.N.Y. Sept. 4, 2015)............25

*Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*,
   67 F.3d 1063 (2d Cir. 1995).................................................................22

**TABLE OF AUTHORITIES (cont.)**

Page(s)

*FCS Advisors, Inc. v. Fair Fin. Co.*,
    605 F.3d 144 (2d Cir. 2010)...........................................................................22

*Felice Fedder Oriental Art, Inc. v. Scanlon*,
    708 F. Supp. 551 (S.D.N.Y. 1989)..................................................................22

*Filartiga v. Pena-Irala*,
    630 F.2d 876 (2d Cir. 1980)...........................................................................17

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)........................................................................................21

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*,
    No. 11-CV-1735 (D.D.C. Feb. 15, 2019) .........................................................8

*Hilton v. Guyot*,
    159 U.S. 113 (1895)........................................................................................12

*Jones v. Simpson*,
    116 U.S. 609 (1886)........................................................................................27

*Jones v. UNUM Life Ins. Co. of Am.*,
    223 F.3d 130 (2d Cir. 2000)......................................................................23, 25

*King v. Cessna Aircraft Co.*,
    505 F.3d 1160 (11th Cir. 2007) ........................................................................3

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)..........................................................................................3

*Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*,
    962 F. Supp. 2d 152 (D.D.C. 2013) ...............................................................22

*Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*,
    179 F. Supp. 2d 118 (S.D.N.Y. 2000).............................................................16

*LG&E Energy Corp. v. Argentine Republic*,
    ICSID Case No. ARB/02/1 (Oct. 3, 2006).......................................................18

*Lightwater Corp. Ltd. v. Republic of Argentina*,
    No. 02-CV-3804, 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003) .......................4

*Lightwater Corp. Ltd. v. Republic of Argentina*,
    No. 02-CV-3804, 2003 WL 21146665 (S.D.N.Y. May 16, 2003) .....................27

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012)..........................................................................3, 10

**TABLE OF AUTHORITIES (cont.)**

Page(s)

*Lovati v. Petróleos de Venezuela, S.A.,*
   No. 20-CV-269 (S.D.N.Y.)................................................................6

*Morgan Art Found. Ltd. v. McKenzie,*
   No. 18-CV-4438, 2019 WL 2725625 (S.D.N.Y. July 1, 2019)....................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983)......................................................................16

*New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.,*
   352 F.3d 599 (2d Cir. 2003)...........................................................21

*NML Capital, Ltd. v. Republic of Argentina,*
   No. 05-CV-2434, 2009 WL 1528535 (S.D.N.Y. May 29, 2009) ................24

*NML Capital v. Republic of Argentina,*
   435 F. App'x 41 (2d Cir. 2011) ..................................................22, 24

*NML Capital v. Republic of Argentina,*
   952 N.E.2d 482 (N.Y. 2011).................................................21, 23, 24

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela,*
   No. 16-CV-1533, 2019 WL 5800005 (D.D.C. Nov. 1, 2019) .............4, 6, 7

*Osterneck v. Ernst & Whinney,*
   489 U.S. 169 (1989)....................................................................22

*Perceptron, Inc. v. Sensor Adaptive Machines, Inc.,*
   221 F.3d 913 (6th Cir. 2000) ........................................................22

*Pescatore v. Pan Am. World Airways, Inc.,*
   97 F.3d 1 (2d Cir. 1996)...............................................................21

*Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.,*
   No. 19-CV-10023 (S.D.N.Y. Oct. 29, 2019) ...............................10, 19

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru,*
   109 F.3d 850 (2d Cir. 1997)................................................5, 11, 13, 14

*Red Tree Investments, LLC v. Petróleos de Venezuela, S.A.,*
   No. 19-CV-2523, 2020 WL 209276 (S.D.N.Y. Jan. 14, 2020) .........4, 5, 6, 7, 10

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela,*
   No. 18-7044 (D.C. Cir. Feb. 14, 2019)..............................................8

*Schwimmer v. Allstate Ins. Co.,*
   176 F.3d 648 (2d Cir. 1999)...........................................................22

## TABLE OF AUTHORITIES (cont.)

Page(s)

*SEC v. Musella,*
748 F. Supp. 1028 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 138 (2d Cir. 1990)................................23

*Somportex Ltd. v. Phila. Chewing Gum Corp.,*
453 F.2d 435 (3d Cir. 1971)................................................................................................12

*Sosa v. Alvarez-Machain,*
542 U.S. 692 (2004)............................................................................................................17

*Tarros S.p.A. v. United States,*
982 F. Supp. 2d 325 (S.D.N.Y. 2013)..................................................................................16

*The Paquete Habana,*
175 U.S. 677 (1900)......................................................................................................16, 17

*United States v. Banco Cafetero Int'l,*
107 F.R.D. 361 (S.D.N.Y. 1985) .........................................................................................3

*United States v. Smith,*
18 U.S. 153 (1820)..............................................................................................................17

*United States v. U.S. Currency in Amount of $294,600,*
No. 91-CV-2567, 1993 WL 416698 (E.D.N.Y. Sept. 28, 1993) ..........................................3

*Wedgeworth v. Fibreboard Corp.,*
706 F.2d 541 (5th Cir. 1983) ..............................................................................................3

*Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO,*
955 F.2d 831 (2d Cir. 1992)................................................................................................24

*Zurich v. Banco Economico S.A.,*
No. 98-CV-5, 1998 WL 205341 (S.D.N.Y. Apr. 28, 1998) ................................................12

**Statutes**

11 U.S.C. § 1515................................................................................................................13

28 U.S.C. § 1606..........................................................................................................17, 21

28 U.S.C. § 1961(a)............................................................................................................23

CPLR 5001(a)....................................................................................................................21

CPLR 5004.........................................................................................................................21

**Regulations**

31 C.F.R. § 407 ...................................................................................................................8

## TABLE OF AUTHORITIES (cont.)

Page(s)

31 C.F.R. Part 591............................................................................................15

31 C.F.R. § 591.201.........................................................................................15

31 C.F.R. § 591.501...........................................................................................9

31 C.F.R. § 591.506(c).......................................................................................8

Exec. Order No. 12,294, 46 Fed. Reg. 14,111 (1981) ...................................11

Exec. Order No. 13,884, 84 Fed. Reg. 38,843 (2019) ...................................15

**Other Authorities**

Articles on Responsibility of States for Internationally Wrongful Acts, Art. 25.1,
    https://bit.ly/1J3uYdk................................................................................17, 19

Corina Pons & Mayela Armas, *Venezuela's Ad-hoc PDVSA Board Begins
    Payment on Citgo-backed 2020 Bond*, Reuters (May 16, 2019),
    https://reut.rs/2LohLsd....................................................................................19

Draft Articles on Responsibility of States for Internationally Wrongful Acts, with
    Commentaries, Art. 25, https://bit.ly/1MIyM9V .........................................19

Fed. Reserve Bank of St. Louis, *1-Year Treasury Constant Maturity Rate*,
    https://bit.ly/2v8Vl89......................................................................................25

OFAC, Frequently Asked Questions No. 74, https://bit.ly/2RjyQG4 .............9

OFAC, Frequently Asked Questions No. 808, https://bit.ly/2v9LQpc......................................8, 15

Robert D. Sloane, *On the Use and Abuse of Necessity in the Law of State
    Responsibility*, 106 Am. J. Int'l Law 447 (2012)...................................15

Tony Wood, *A Year on, Juan Guaidó's Attempt at Regime Change in Venezuela
    Has Stalled*, The Guardian (Jan. 23, 2020), https://bit.ly/2tCnzrH.............4

## INTRODUCTION

Venezuela has withdrawn all of its affirmative defenses and has offered no defense to liability in its response to Plaintiffs' motion for summary judgment.  Venezuela further concedes that the entry of judgment is now a "ministerial act."  Venez. Br. 12.  Summary judgment on Plaintiffs' claims therefore certainly is appropriate.  Venezuela questions only the matter of "when," seeking from this Court an indefinite stay of the case.  That request should be rejected.

Venezuela argues that a stay is necessary to facilitate its efforts to restructure its sovereign debt.  But no such restructuring process has been initiated or even announced—nor are there any concrete or imminent plans to do so.  The reason for that is obvious:  President Guaidó cannot undertake any such restructuring as long as the Maduro regime continues to maintain its grip on the levers of power in Venezuela.  Thus, what President Guaidó has offered is that *if* and when he obtains power in Venezuela and the country's political and economic crisis subsides, *then* he intends to effect a voluntary restructuring of sovereign debt.  Neither equity nor international comity supports a stay in light of such a contingent and tenuous commitment.  Moreover, although Venezuela has requested stays in other cases, this is the only case where it has requested an indefinite stay pending its aspirational debt restructuring.  Accordingly, granting a stay here would cause unique prejudice to Plaintiffs by indefinitely suspending their legal rights while other creditors proceed to judgment.

Nor will entry of judgment on Plaintiffs' claims impair Venezuela's ability to manage its unfolding political and economic crisis.  Venezuela suggests that entry of judgment will lead immediately to efforts to seize Venezuela's assets to satisfy the judgments and wreck Venezuela's hopes for economic recovery.  But any such enforcement efforts in the United States must be preceded by an order under 28 U.S.C. § 1610(c).  Thus, whether and under what circumstances Plaintiffs later may seek to enforce their judgments through seizure of assets is an issue for another

day.  Speculation about enforcement measures that might be taken in the future is not a basis for further delay in the adjudication of Plaintiffs' claims.

On the merits, Venezuela contests only Plaintiffs' entitlement to prejudgment interest on missed interest payments on the bonds.  This objection lacks merit; courts consistently have recognized that state, not federal, law controls the award of prejudgment interest in these circumstances.  And under New York law, which governs under the terms of the bonds and fiscal agency agreements, prejudgment interest at the statutory rate on missed interest payments is mandatory.  Venezuela mischaracterizes Plaintiffs' request as seeking usurious "interest on interest" (at 26), but, as courts repeatedly have held, prejudgment interest on missed interest payments is necessary to compensate Plaintiffs for the lost time value of those payments.

Finally, in a last-ditch effort to push off judgment, Venezuela urges, for the first time, that this Court should invite briefing on potential "mechanisms" for avoiding fraud.  But as Venezuela admits, there has been discovery in these cases and there is no evidence or even suggestion of fraud here.  The purely theoretical—and entirely unfounded—possibility that some other litigant in some other case might commit fraud on the Court does not warrant a delay of judgment.

## I.    These Cases Should Not Be Stayed

Venezuela's core submission is that this Court should stay Plaintiffs' cases "until such time as the Republic is in a position to propose an orderly, consensual debt resolution plan supported by the international community"—which Venezuela admits can occur only "once [its] political and humanitarian crisis can be abated."  Venez. Br. 12, 17.  In other words, Venezuela would have this Court delay the entry of judgment on Plaintiffs' claims—which Venezuela concedes are meritorious—until (if ever) President Guaidó can unseat Maduro, revive Venezuela's economy, and craft a restructuring plan for all of Venezuela's outstanding debts.  Venezuela has not requested such a breathtakingly open-ended stay in any other case, and there is no basis for granting one

here.  This Court should deny Venezuela's motion and promptly grant Plaintiffs' consolidated motion for summary judgment.

### A.    This Court Should Not Stay These Cases Under Its Inherent Powers

Staying a civil case is an "extraordinary remedy," and a district court's inherent power to do so has limits.  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012). Most relevant here, a district court lacks authority to grant a stay request that is "immoderate in extent" or of "indefinite duration."  *Clinton v. Jones*, 520 U.S. 681, 707 (1997); *United States v. Banco Cafetero Int'l*, 107 F.R.D. 361, 366 (S.D.N.Y. 1985).[1]  Courts frequently hold that a stay is immoderate or indefinite—even when it is tied to the termination of ongoing collateral proceedings—if it is "difficult to accurately predict the time that [the plaintiff] will be forced to stand aside."  *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) (reversing stay pending proceeding before Iran-United States Claims Tribunal); *United States v. U.S. Currency in Amount of $294,600*, No. 91-CV-2567, 1993 WL 416698, at *4 (E.D.N.Y. Sept. 28, 1993) (denying stay pending criminal prosecutions); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936) (stay "is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits").

Here, Venezuela's requested stay undisputedly is of an indefinite duration, and therefore beyond the discretion of this Court to grant.  Even when a foreign government actually is in the midst of a debt-restructuring process, courts have found it inappropriate to stay judicial

---

[1] *See also King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1172 (11th Cir. 2007) ("We have repeatedly held that a stay order which is 'immoderate' and involves a 'protracted and indefinite period' of delay is impermissible."); *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) ("'[S]tay orders will be reversed when they are found to be immoderate or of an indefinite duration.'"); *United States v. U.S. Currency in Amount of $294,600*, No. 91-CV-2567, 1993 WL 416698, at *4 (E.D.N.Y. Sept. 28, 1993) ("[A] stay of indefinite duration cannot be granted.").

proceedings.  *See Lightwater Corp. Ltd. v. Republic of Argentina*, No. 02-CV-3804, 2003 WL 1878420, at *4 (S.D.N.Y. Apr. 14, 2003) ("The court declines to grant a stay of the proceedings in order to allow the completion of debt restructuring negotiations, since there is no assurance about the success or the timing of such negotiations.").

But here Venezuela does not even request a stay pending any ongoing debt-restructuring process; instead, it asks for a stay pending a debt-restructuring process that it admits cannot even *begin* until President Guaidó seizes the levers of power in Venezuela and rebuilds its economy. Yet the prospect of President Guaidó *ever* taking power in Venezuela is dwindling.  *See* Tony Wood, *A Year on, Juan Guaidó's Attempt at Regime Change in Venezuela Has Stalled*, The Guardian (Jan. 23, 2020), https://bit.ly/2tCnzrH ("[N]ot only has the US-backed attempt at regime change failed to dislodge [Maduro], but it is now Guaidó's position at the head of the Venezuelan opposition that is looking shaky.").  And even if President Guaidó ousts Maduro, "it may take years to stabilize the country and fully transition to another political regime," as multiple district courts have recognized in denying more modest stay requests from Venezuela and its instrumentalities in other cases.  *Red Tree Investments, LLC v. Petróleos de Venezuela, S.A.*, No. 19-CV-2523, 2020 WL 209276, at *3 (S.D.N.Y. Jan. 14, 2020) (quoting *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 16-CV-1533, 2019 WL 5800005, at *4 (D.D.C. Nov. 1, 2019)).  Here, as in those cases, it "would not be appropriate or fair to [Plaintiffs] to stay the case indefinitely until that transition is completed," if ever.  *OI European Grp.*, 2019 WL 5800005, at *4; *see also Red Tree*, 2020 WL 209276, at *3 (same).

The indefinite nature of Venezuela's stay request alone requires that it be denied.  What is more, though, all of the equitable stay factors strongly counsel against *any* further delay in the entry of judgment in these cases.  As multiple district courts have concluded in denying much more

4

limited stay requests, delaying the entry of judgment seriously prejudices creditors and taxes judicial resources while offering no benefit to Venezuela or anyone else.  *E.g.*, *Red Tree*, 2020 WL 209276, at *3.

*Plaintiffs' Interests.*  Paramount in the equitable analysis is Plaintiffs' strong "interest in an expeditious resolution" of these suits—an interest that "grows as the litigation is further delayed." *Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438 (AT), 2019 WL 2725625, at *2 (S.D.N.Y. July 1, 2019); *Red Tree*, 2020 WL 209276, at *2.  Plaintiffs *already* have been subject to extensive delays in these cases.  Since the initiation of these suits over a year ago, Venezuela has defaulted, received a 60-day stay, and conducted five months of discovery—before now opting not to dispute a single fact in Plaintiffs' 56.1 statement and conceding liability.  Further delaying the entry of judgment in these cases would substantially prejudice Plaintiffs on at least two dimensions.

First, it would impair Plaintiffs' ability to resolve the debt Venezuela owes them.  The Second Circuit has recognized that because a stay in favor of sovereign restructuring proceedings would "in effect, . . . prohibit[] the exercise of legal rights outside of the negotiations," such a stay would transform any supposedly "voluntary" debt restructuring into "the equivalent of a judicially-enforced bankruptcy proceeding."  *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 855 (2d Cir. 1997).  And that threat is magnified here by the collective-action clauses in the 7.75% 2019 Bonds, which allow a supermajority to bind nonconsenting creditors to the terms of restructured bonds.  *See, e.g.*, Joint Decl., Ex. C, at 14, ECF No. 42 (2001 FAA Amendment No. 2) (allowing supermajority to, among other things: (1) "change the due date" for interest and principal payments; (2) "reduce the principal amount" or "the interest rate"; (3) "change the governing law"; and (4) change "the Republic's agreement not to claim and to waive irrevocably

any immunity"). A judgment would protect the Pharo Plaintiffs—who hold beneficial interests in the 7.75% 2019 Bonds—from such a compulsory restructuring of their debts. A stay, on the other hand, would prejudice the Pharo Plaintiffs by denying them that protection.

Second, a stay would leave Plaintiffs in limbo "while other creditors are free to continue toward judgments, enforcement of awards, or attachment of the same assets to which Plaintiff[s] claim[] entitlement." *Red Tree*, 2020 WL 209276, at *2. To Plaintiffs' knowledge, there are currently over 30 cases pending against Venezuela and its state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA"), in numerous different courts. *See* Letter, Ex. 1, ECF No. 23-1.[2] In a number of those cases, creditors already have judgments and are seeking to execute on Venezuela's assets. *See, e.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-MC-151 (D. Del.) ("*Crystallex*"). Most of these cases have not been stayed at all, and *no court* has granted an application from Venezuela for the kind of indefinite stay it seeks here. In fact, Plaintiffs are not aware of any other case in which Venezuela has even *requested* an indefinite stay pending the restructuring of its debt. And several district courts have recently denied much more limited stay requests:

- ***Red Tree***: In two related cases against PDVSA, both filed after Plaintiffs' lawsuits, Judge Nathan denied PDVSA's request for a 120-day stay. *E.g.*, 2020 WL 209276. Judge Nathan did so based on "the prejudice to Plaintiff" that would result if (1) "later-filed claims ultimately obtain priority," and (2) ongoing execution efforts by other creditors "impact [Plaintiff's] ability to recover *any* judgment." *Id.* at *2–3.

- ***OI European Group***: In an arbitration-enforcement action, Judge Jackson rejected Venezuela's request for a 120-day stay and granted a creditor leave to seek attachment and execution of Venezuela's assets to satisfy a $400 million judgment. 2019 WL 5800005, at *1. The court found nothing to suggest "that the Guaidó government will be in a position to do anything other than request another stay at the end of the 120

---

[2] *See also ACLI Investments Ltd. et al. v. Bolivarian Republic of Venezuela*, No. 19-CV-9014 (S.D.N.Y.); *Contrarian Capital Mgmt. v. Bolivarian Republic of Venezuela*, No. 19-CV-11018 (AT) (S.D.N.Y.); *Lovati v. Petróleos de Venezuela, S.A.*, No. 20-CV-269 (S.D.N.Y.).

days," and concluded that a "stay in this case would only serve to delay plaintiff's entitlement to a judgment." *Id.* at *4.

- ***Dresser-Rand***:  In another case against PDVSA, also filed after Plaintiffs' suits, Judge Stanton initially deferred PDVSA's response to the plaintiff's summary judgment motion under Rule 56(d), but later reversed course.  No. 19-CV-2689, ECF No. 44 ("No further extensions are contemplated.").  The plaintiff's motion for summary judgment has been fully briefed since December, and PDVSA has not sought a further stay.

Ignoring these orders, Venezuela instead relies exclusively on the stay order that Chief Judge Stark recently entered in the *Crystallex* litigation.  *See Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-CV-1082, 2019 WL 6785504 (D. Del. Dec. 12, 2019).  But as Judge Nathan recognized in *Red Tree*, that stay is not analogous to what Venezuela requests here.  2020 WL 209276, at *2 n.1.

In *Crystallex*, Chief Judge Stark allowed Crystallex (a creditor of Venezuela) to attach shares of CITGO's holding company (shares owned by PDVSA) because PDVSA is the alter ego of Venezuela.  333 F. Supp. 3d 380 (D. Del. 2018).  Last summer, the Third Circuit unanimously affirmed the attachment.  932 F.3d 126 (3d Cir. 2019).  In the order Venezuela repeatedly cites, Chief Judge Stark entered a stay *pending appeal* under Rule 62(c), temporarily halting Crystallex's efforts to auction off the attached shares, in order to give Venezuela and PDVSA time to seek Supreme Court review of the underlying alter ego finding.  *Crystallex*, 2019 WL 6785504, at *2. Chief Judge Stark concluded that Crystallex would not be prejudiced by the temporary stay because it had established priority in the shares and thus is "fully secured for whatever the value is of those assets."  *Id.* at *2 n.4.  Although he mentioned Venezuela's crisis as among the nine factors influencing his stay decision, Chief Judge Stark made clear that those considerations would not support a further stay:  "If the Supreme Court proceedings do not alter the Third Circuit's instructions to this Court, the Court intends to proceed toward selling those shares."  *Id.*

The *Crystallex* stay thus has no bearing on this case. It is a limited stay of asset execution by a fully secured creditor designed to give Venezuela time to challenge the legality of the underlying alter ego finding through the appellate process. Here, by contrast, Venezuela is seeking an *indefinite* stay of the mere entry of judgment on claims Venezuela *concedes* are meritorious. Venezuela cites no case granting a stay under similar circumstances.[3] A stay here would thus prejudice Plaintiffs vis-à-vis other creditors of Venezuela.

Venezuela seeks to minimize that prejudice, arguing that U.S. sanctions implemented by the Treasury Department's Office of Foreign Asset Control ("OFAC") have essentially frozen all Venezuela's creditors in place, and that Plaintiffs therefore will not fall behind other creditors. But as Venezuela acknowledges, the sanctions prohibit only the unlicensed "*enforcement* of any . . . judgment . . . through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to [sanctions]." 31 C.F.R. §§ 591.506(c), 407; Venez. Br. 9–10. They do not prohibit the *entry of judgment* against Venezuela and PDVSA. *See* OFAC, Frequently Asked Questions No. 808, https://bit.ly/2v9LQpc (specific license not needed to "continue U.S. legal proceedings"). And if the entry of judgment is delayed in these cases, the many creditors who already have final judgments or obtain them in the interim will have distinct advantages over Plaintiffs, including (vis-à-vis the Pharo Plaintiffs) not being subject to the prospect of compulsory restructuring.

---

[3] The other cases cited by Venezuela are even further afield. *See* Order, *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, No. 11-CV-1735 (D.D.C. Feb. 15, 2019), ECF No. 133 (staying case on plaintiff-creditor's motion); Plaintiffs' Status Report, *Comparelli v. Republica Bolivariana de Venezuela*, No. 14-CV-24414 (S.D. Fla. Sept. 28, 2019), ECF No. 173 (plaintiffs agreeing to further 120-day stay); Order, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 (D.C. Cir. Feb. 14, 2019), Doc. 1773506 (clerk order granting briefing extension); Doc. No. 1790740 (June 3, 2019) (granting Venezuela's unopposed motion to hold appeal in abeyance pending final resolution of proceedings in France to set aside the arbitration award plaintiff is seeking to enforce).

Moreover, creditors with final judgments can request "specific licenses" from OFAC to enforce their judgments, and may be granted such licenses while Plaintiffs have been sidelined. *See* 31 C.F.R. § 591.501; *see also* OFAC, Frequently Asked Questions No. 74, https://bit.ly/2RjyQG4.  Crystallex, for example, has indicated that it will attempt to get OFAC's authorization to auction off the controlling shares in CITGO.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-MC-151, ECF No. 157 at 7 (Dec. 19, 2019).  Further delay in the entry of judgment here would deny Plaintiffs any possibility of participating in that process.  In addition, even if OFAC were to refuse to grant specific licenses to any creditors, creditors with judgments in hand will be much better positioned to pursue enforcement remedies and protect their legal interests once the sanctions against Venezuela are modified or lifted.

Finally, unable to meaningfully dispute the harm that a stay would cause Plaintiffs, Venezuela suggests that Plaintiffs' harm is self-inflicted because Plaintiffs purchased the bonds at a "material discount" and therefore should have known that the "prospects for timely repayment were remote."  Venez. Br. 9.  But whatever Plaintiffs' expectations about the timeliness of repayment, Plaintiffs fully and justifiably expected that they would be able to exercise the same legal rights as other creditors to timely reduce their contract claims to judgment.  Venezuela's proposed stay would rob Plaintiffs of those legal rights while other creditors freely exercise theirs.

***Defendant's Interests***.  In contrast to Plaintiffs, Venezuela will suffer no prejudice from the Court's entry of judgment in these cases.  Plaintiffs' summary judgment motion does not seek attachment of Venezuela's assets—it asks this Court simply to determine liability (which is undisputed) and fix damages (which are largely undisputed).  The mere entry of judgment will not exacerbate Venezuela's crisis or contribute to a "run on the bank."  Venez. Br. 10–11.  Any enforcement efforts in the United States must be preceded by an order under 28 U.S.C. § 1610(c),

9

which requires a "reasonable period of time" to elapse "following the entry of judgment."  If and when Plaintiffs seek such an order, Venezuela will be free to make its claims of hardship at that time, in view of the facts then existing.

Nor can Venezuela claim that this litigation itself imposes undue burdens on its infrastructure.  Indeed, in another case filed within this District, the Guaidó-appointed board of PDVSA recently sued to pursue its own claims *against* creditors, *see Petróleos de Venezuela, S.A. et al. v. MUFG Union Bank, N.A. et al.*, No. 19-CV-10023 (S.D.N.Y), apparently finding that the maintenance of such litigation did not impair Venezuela's interests.  There is no need for this Court to resort to the "extraordinary remedy" of a stay to protect Venezuela's interests.  *Louis Vuitton*, 676 F.3d at 98.

*Judicial Efficiency.*  Judicial efficiency is served by resolving these cases promptly.  *See Red Tree*, 2020 WL 209276, at *2 ("[T]he judicial interest in favor of resolving cases on their merits also weights in favor of granting a stay.").  Now that Venezuela has conceded liability, it would be wasteful for the Court to indefinitely maintain jurisdiction over these cases, adjudicating stay motion after stay motion.  The far more efficient course is to promptly enter judgment, which Venezuela concedes is now a "ministerial act."  Venez. Br. 12.  And entering judgment would not be an "empty act," as Venezuela maintains (*id.*)—rather, it would provide Plaintiffs the benefits of a final judgment and would allow Plaintiffs to begin the enforcement process, should they wish to do so.

*Public Interest.*  The public interest likewise cuts against a stay.  The "United States has a strong interest in ensuring the enforceability of valid debts under the principles of contract law," and Venezuela's proposed stay threatens to make Plaintiffs' concededly valid contract claims subject to a judicially enforced restructuring regime that neither the Foreign Sovereign Immunities

Act ("FSIA")  nor Venezuela's bond documents provides.  *Pravin*, 109 F.3d at 855.  Venezuela

suggests that U.S. sanctions manifest the public interest in supporting the Guaidó administration

and "prevent[ing] further diverting of Venezuela's assets."  Venez. Br. 13.  But, again, those

sanctions apply to the *enforcement* of judgments, not the *entry* of judgment.  Unlike sanctions the

President has adopted in the past, the U.S. sanctions against Venezuela do *not* suspend litigation

or prohibit courts from entering judgment on valid claims against Venezuela.  *Cf.* Exec. Order No.

12,294, 46 Fed. Reg. 14,111 (1981); *see also Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981).

The prompt entry of judgment in these cases thus is consistent with U.S. sanctions and advances

the public interest in the enforcement of valid contracts.

> **Non-Parties.**  The interests of non-parties here, although negligible, also militate against a

stay.  For the reasons already discussed, the mere entry of judgment in these cases will not affect

the crisis in Venezuela at all, much less endanger "[h]umanitarian interests and human-rights

protections."  Venez. Br. 12.  Nor will it unjustly disadvantage other creditors.

> In short, all of the equitable factors point strongly in favor of proceeding directly to

judgment in these cases.  This Court should deny Venezuela's stay request.

## B.     Venezuela Is Not Entitled To A Stay As A Matter Of International Comity Or International Law

> In the absence of equitable grounds for a stay, Venezuela cobbles together a mash of

comity, international law, and inapposite contract principles to seek a stay "based on international

comity."  Venez. Br. 14.  Yet Venezuela does not cite a single case in which a court has granted

an indefinite stay in a private bondholder suit against a sovereign.  In fact, several of the cases it

cites make clear that international comity does *not* support a stay in such circumstances.  In this

case, which is governed by New York law (because that is what Venezuela chose in its bond

11

documents), Venezuela's resort to abstract principles of international comity fares no better than its invocation of equity.

### 1.   International Comity Does Not Support A Stay

International comity provides no basis for a stay here.  International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).  Comity is not, however, an absolute "rule of law, but one of practice, convenience, and expediency." *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971).

Here, there is no foreign "legislative, executive or judicial act[]" for this Court to recognize. *Hilton*, 159 U.S. at 164.  Rather, Venezuela merely has stated that it *hopes* to conduct a "voluntary" debt restructuring, when (if ever) President Guaidó takes power in Venezuela.  Venezuela's ambition that, at some point in the future, it will effect a restructuring of its debt is not the kind of sovereign act to which courts extend international comity.  *See Zurich v. Banco Economico S.A.*, No. 98-CV-5, 1998 WL 205341, at *3 (S.D.N.Y. Apr. 28, 1998) ("[W]hen a non-judicial act of a foreign government imperils the right of the creditor to collect at all (or at least to do so in the foreseeable future), deference to that act is inappropriate.").

For this reason, Venezuela's extensive reliance on *Canada Southern Railway Co. v. Gebhard*, 109 U.S. 527 (1883), is misplaced.  In that case, the Supreme Court gave "binding" extraterritorial effect to Canadian legislation that restructured the debt of a state-sponsored railroad corporation with the assent of a supermajority of bondholders.  *Id.* at 536, 530–31.  Invoking comity, the Court held that domestic bondholders objecting to the legislative restructuring could not seek relief in U.S. courts, saying that under "the true spirit of international comity," restructurings "of this character, legalized at home, should be recognized in other countries."  *Id.* at 539.  *Canada Southern* thus stands for the unremarkable proposition that U.S. courts generally

decline to interfere with ongoing foreign bankruptcy proceedings. *See, e.g.*, *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 460 (2d Cir. 1985) (citing *Canada Southern* and affirming vacatur of an attachment order in light of ongoing bankruptcy proceedings in Sweden); *Cornfeld v. Inv'rs Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1260–61 (S.D.N.Y. 1979) (citing *Canada Southern* and dismissing complaint in light of ongoing bankruptcy proceedings in Canada); *see also* 11 U.S.C. § 1515 (providing for domestic recognition of certain foreign restructurings). That principle has no application here, as there is no existing, or even proposed, foreign bankruptcy proceeding.

Equally misplaced is Venezuela's reliance on cases finding comity principles applicable to *ongoing* sovereign debt-restructuring proceedings. *See Pravin*, 109 F.3d 850; *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516 (2d Cir. 1985). In those cases, the foreign sovereigns had entered restructuring agreements and taken significant steps toward resolving their debts. *See Pravin*, 109 F.3d at 852 (Peru entered a restructuring agreement and "made significant strides in restructuring its economy, reducing inflation, and decreasing the government deficit"); *Allied Bank*, 757 F.2d at 519 (Costa Rica "signed a refinancing agreement with the coordinating agent for Costa Rica's external creditors"). And of course, in applying comity principles, the Court in each of those cases ultimately agreed with the creditors that no stay was warranted.

Here, by contrast, there is no existing (or even imminent) restructuring proceeding to which international comity could be extended. Rather, what Venezuela aspires to here is a *future* restructuring that is purely "voluntary." Venez. Br. 11, 19; *see also id.* at 17 (promising a "consensual resolution"). If Plaintiffs' participation in Venezuela's proposed restructuring is indeed to be "voluntary," then it makes no sense to demand that Plaintiffs be *compelled* to hold off while other parties (maybe) participate in an (eventual) restructuring that will have no effect on

13

Plaintiffs' claims.  *See Pravin*, 109 F.3d at 855.  There is no basis to invoke international comity to prevent them from doing so.

In fact, even if considerations of comity were relevant here, the very cases on which Venezuela relies demonstrate that Venezuela's promise of "voluntary" restructuring does not warrant a stay.  Although the Court in *Allied Bank* agreed that international comity was a relevant consideration in that context, it emphasized even then that a stay based on international comity is inappropriate if it would be "inconsistent with the law and policy of the United States."  *Allied Bank Int'l*, 757 F.2d at 522.  And in *Pravin*, the Second Circuit held that an indefinite stay of litigation pending even an *ongoing* voluntary debt-restructuring process is inconsistent with the strong U.S. policy of "ensuring the enforceability of valid debts under the principles of contract law, and in particular, the continuing enforceability of foreign debts owed to United States lenders."  *Pravin*, 109 F.3d at 855 (citing, inter alia, *Allied Bank Int'l*, 757 F.2d at 521–22).  The Second Circuit therefore refused to deny the creditor in that case "its right to enforce the underlying debt—despite clear United States policy that it be able to do so—by making [the creditor's] rights conditional on the completion of a process which had no obvious (and reasonably proximate) termination date."  *Id.*  *Pravin*'s reasoning applies with even greater force here, as there are no ongoing restructuring negotiations, nor is there any indication that such negotiations are likely to take place at any time in the near or even reasonably foreseeable future.

Venezuela responds that "the Executive Branch's commitment to 'rebuilding Venezuela's infrastructure and economy'" counsels in favor of a stay.  Venez. Br. 18–19.  But that is the precise argument rejected by the Second Circuit in *Allied Bank*—on which Venezuela itself relies.  There, the Court accepted the United States' position that the Executive's "willingness to restructure Costa Rica's intergovernmental obligations or . . . [the] continued United States aid" did not mean

a stay or dismissal was warranted.  757 F.2d at 520.  That the Executive supports Venezuela's economic rebuilding does not mean it believes Venezuela should be immune from creditor litigation in U.S. courts.

In fact, the Executive has already set forth its foreign policy position with respect to litigation against Venezuela in the form of OFAC sanctions.  *See* 31 C.F.R. Part 591 (Venezuela Sanctions Regulations).  And while those sanctions impose various restrictions on the transfer of Venezuela's assets, *see, e.g.*, Exec. Order No. 13,884, 84 Fed. Reg. 38,843 (2019); 31 C.F.R. § 591.201, none of them prevents plaintiffs from bringing suit and obtaining judgment to enforce debt obligations, *see* OFAC, Frequently Asked Questions No. 808, https://bit.ly/2v9LQpc.  Courts have long recognized that foreign affairs is "a domain in which the controlling role of the political branches is both necessary and proper."  *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1328 (2016). The United States having expressed its view as to the propriety of sovereign-debt litigation against Venezuela, this Court has no occasion to second-guess that judgment.  *See Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("[Foreign policy decisions] are decisions of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and have long been held to belong in the domain of political power not subject to judicial intrusion or inquiry."). U.S. policy does not support a stay here.

### 2.      International Law Does Not Support A Stay

Next, Venezuela invokes the international law doctrine of "necessity," contending that its "financial obligations may temporarily be deferred" while it resolves its economic issues.  Venez. Br. 20.  The doctrine of necessity, however, is a substantive defense to liability that, if successfully raised, "preclude[s] the wrongfulness of state conduct that might otherwise breach" international law.  Robert D. Sloane, *On the Use and Abuse of Necessity in the Law of State Responsibility*, 106 Am. J. Int'l Law 447, 449 (2012).  Venezuela has withdrawn its affirmative defenses to liability.

*See* First Am. Answer, ECF No. 32-1.  It cannot revive those abandoned defenses under the guise of a request for a "stay."  Having made a strategic decision not to contest liability, Venezuela may not obtain an effective victory on the merits (*i.e.*, a stay of indefinite and potentially infinite duration) through backdoor means.  *Cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal.").  In any event, regardless whether Venezuela invokes the doctrine of necessity as a defense to liability or grounds for a stay, that effort fails.

*First*, customary norms of international law like the doctrine of "necessity" do not apply here because the parties' respective obligations are explicitly governed by the terms of the bonds and fiscal agency agreements, which in turn are governed by New York law, not international law. International law applies in U.S. courts only "as often as questions of right depending upon it are duly presented for their determination."  *The Paquete Habana*, 175 U.S. 677, 700 (1900); *see also Tarros S.p.A. v. United States*, 982 F. Supp. 2d 325, 338 n.12 (S.D.N.Y. 2013) (the applicability of international law is "restricted to 'limited enclaves,'" such as the Alien Tort Statute).  These cases present no international law questions.  Here, the parties have entered into private agreements that define their respective rights and obligations, and they selected New York law—not international law—to govern their disputes.  Joint Decl., Ex. A, at 25, ECF No. 42-1; *id.* Ex. B, at 26, ECF No. 42-2.  Having so elected, Venezuela's status as a foreign sovereign does not entitle it to raise extra-contractual international law defenses not available to private litigants under New York law.  *Cf. Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 138 (S.D.N.Y. 2000) (enforcing choice-of-law clause in international contract).

In fact, the FSIA provides that where a foreign sovereign is not entitled to immunity, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 1606.  The doctrine of necessity is not available to a private party sued under New York contract law, and it is not available to Venezuela.

*Second*, even if international law were generally relevant to this dispute, there is no universally recognized norm of international law providing for a defense of necessity in the circumstances presented here.  International norms are not incorporated into federal common law unless and until they become "accepted by the civilized world and defined with . . . specificity." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 725 (2004).  The norm must be a "settled rule of international law," established by "general assent of civilized nations."  *The Paquete Habana*, 175 U.S. at 694; *see also United States v. Smith*, 18 U.S. 153, 160 (1820) (norm must be established "with reasonable certainty").  And that requirement "is a stringent one."  *Filartiga v. Pena-Irala*, 630 F.2d 876, 881 (2d Cir. 1980).

Although a state of necessity may be invoked as a defense to a claimed violation of international law, it does not follow that such a defense is available in cases between private parties involving breaches of contracts governed by national laws.  The Articles on Responsibility of States for International Wrongful Acts (on which Venezuela relies) explains that the defense of necessity excuses only a breach of an "international obligation"—that is, an obligation imposed by international law.  Articles on Responsibility of States for Internationally Wrongful Acts, Art. 25.1, https://bit.ly/1J3uYdk.

Here, the basis for Plaintiffs' claims is New York contract law.  *See* Notice of Removal, Ex. A, at 4–9, ECF No. 1-1 (Complaint).  To be sure, a breached fiscal obligation *can* give rise to international-law claims against a foreign sovereign, as in the case Venezuela cites regarding a

bilateral investment treaty.  *See Cont'l Cas. Co. v. Argentine Republic*, ICSID Case No. ARB/03/9, Award, ¶ 1 (Sept. 5, 2008) (case based on "alleged breaches of [claimant's] rights as investor under the 1991 Treaty between the United States of America and the Argentine Republic"); *see also LG&E Energy Corp. v. Argentine Republic*, ICSID Case No. ARB/02/1, Decision on Liability, ¶ 1–3, 9 (Oct. 3, 2006) (same).  But where, as here, a plaintiff sues a foreign sovereign under a private contract, there is no recognized international norm of a defense of necessity.

In fact, the German Constitutional Court held precisely that in the *Argentine Necessity Case*, Bundesverfassungsgerichts [BVerfG] [Federal Constitutional Court] May 8, 2007, 138 I.L.R. 1 (attached as exhibit).  There, in a private suit seeking payment on bond obligations governed by private contracts, the court concluded that Argentina could not invoke the international doctrine of necessity because "there is no evidence for a State practice based on the necessary legal conviction . . . to extend the legal justification for the invocation of State necessity to relationships under private law involving private creditors."  *Id.* at 10; *see also id.* ("Invocation of State necessity is recognized in customary international law in those legal relationships which are *exclusively* subject to international law . . . ." (emphasis added)).  The court undertook the same analysis called for under U.S. law—examining whether there was a "general rule of international law" applicable to that dispute, *id.* at 9—and concluded the defense was unavailable.  Venezuela has offered no evidence of an international norm providing for the defense of necessity in a case, such as this one, where the parties' respective obligations are governed by private contract law, and one court of international repute has squarely rejected such a norm.  Venezuela cannot take advantage of that defense here.

*Third*, even if international law were applicable, and even if there were an international norm of necessity applicable to this case, Venezuela has failed to set forth facts establishing that

defense.  The defense of necessity is available only in "exceptional cases," and "is subject to strict limitations to safeguard against possible abuse."  Draft Articles on Responsibility of States for Internationally Wrongful Acts, with Commentaries, Art. 25 ¶¶ 1–2, https://bit.ly/1MIyM9V.  It is available only where the wrongful conduct "is the only way for the State to safeguard an essential interest against a grave and imminent peril," and "does not seriously impair an essential interest of the State or States toward which the obligation exists, or of the international community as a whole."  Articles on Responsibility of States for Internationally Wrongful Acts, Art. 25.1.

Here, the narrow defense of necessity is not available to Venezuela.  In May of 2019—well after Venezuela first defaulted on the bonds at issue here—Venezuela (and in particular, the Guaidó government that directs this litigation) made a $71 million interest payment to holders of bonds issued by PDVSA, set to mature in 2020.  *See* Corina Pons & Mayela Armas, *Venezuela's Ad-hoc PDVSA Board Begins Payment on Citgo-backed 2020 Bond*, Reuters (May 16, 2019), https://reut.rs/2LohLsd.  Since then, PDVSA has filed a lawsuit seeking to void those bonds.  *See* Complaint, *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, No. 19-CV-10023 (S.D.N.Y. Oct. 29, 2019).  Regardless of the fiscal state of Venezuela, it plainly has adequate resources to pay those bondholders it deems sufficiently important to its own interest and to prosecute affirmative litigation in U.S. federal courts.  All that is left in this case is one more brief filing and a decision by this Court.  Surely if Venezuela has assets to pay certain select creditors and bring lawsuits, a single brief will not cripple it.

### 3.      Impossibility Is Not A Defense

Abandoning all precedent or record evidence, Venezuela lastly asserts that a stay is necessary because "it is impossible for the Republic to perform or settle its debts and obligations at this time and in the absence of an economic turnaround."  Venez. Br. 22.  The reason for Venezuela's dearth of authority is apparent—New York law is clear that a purported inability or

impossibility to pay debts is not a defense to breach of a private contract. *See 407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 244 N.E.2d 37, 41 (N.Y. 1968) ("[W]here impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused."). And even to the extent international law could be relevant to this dispute, Venezuela cites no norm of international law that would permit it to avoid liability on impossibility grounds.

\* \* \*

There is no basis for a stay of any duration here. Venezuela has not restructured, is not in the midst of restructuring, and has not even begun restructuring, its debt. Plaintiffs will be prejudiced if they, among all other creditors, must wait indefinitely while President Guaidó's government attempts to obtain control in Venezuela and restructure the economy. At issue here is only the question of whether Plaintiffs may obtain a judgment—the issue of attachment of assets is not before the Court. There are no equitable or comity principles justifying a stay in these circumstances.

## II.    Plaintiffs Are Entitled To Prejudgment Interest Under New York Law

On the merits, Venezuela disputes only Plaintiffs' entitlement to prejudgment interest on missed interest installments due under the bonds. But prejudgment interest on missed interest payments is not discretionary in these cases. New York law, which applies by the terms of the parties' contracts and under the FSIA, requires this Court to award Plaintiffs prejudgment interest at New York's statutory rate of 9% on *all* missed interest payments, including those that come due post-maturity. Even under federal prejudgment interest principles, however, application of New York's statutory rate still is necessary to provide Plaintiffs' full compensation. As the New York Court of Appeals has explained, "the loss of the time value" of missed interest payments "can be

accomplished only by awarding . . . statutory interest on the unpaid interest-only payments." *NML Capital v. Republic of Argentina*, 952 N.E.2d 482, 494 (N.Y. 2011).

### A.    The Parties' Contracts And The FSIA Require The Application Of New York's Prejudgment Interest Statute

Venezuela does not dispute that the parties' contracts call for the application of New York law or that, under New York law, a 9% prejudgment interest rate would be "mandatory" in these breach-of-contract actions. *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 603, 606 (2d Cir. 2003); *see also* CPLR 5001(a) ("Interest *shall be recovered* upon a sum awarded because of a breach of performance of a contract . . . ." (emphasis added)); CPLR 5004. Venezuela further concedes that the New York statutory rate would apply in a state-court action involving a foreign sovereign as well as in a federal-court diversity action involving private parties. Venez. Br. 24. Yet Venezuela argues that the FSIA requires a different outcome—the application of *federal*, judge-made prejudgment interest principles—when foreign sovereigns are sued in, or remove to, federal court.

The FSIA says just the opposite. It provides that a "foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. Based on that provision, the Supreme Court and the Second Circuit have held that the FSIA "operates as a 'pass-through' to state law principles." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12 (2d Cir. 1996); *see also First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 622 (1983) ("[W]here state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances."). Congress, in other words, "did not intend that the FSIA establish substantive rules of liability." *Bank of New York v. Yugoimport*, 745 F.3d 599, 609 n.8 (2d Cir. 2014). Rather,

it intended to make "state substantive law . . . controlling in FSIA cases." *Barkanic v. Gen. Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 959 (2d Cir. 1991).

It is well established that the "awarding of prejudgment interest is considered a question of substantive law," *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999), because prejudgment interest "is an element of [the plaintiff's] complete compensation," *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989); *see also Perceptron, Inc. v. Sensor Adaptive Machines*, Inc., 221 F.3d 913, 922 (6th Cir. 2000) ("Prejudgment interest is a substantive element of damage which must be determined under state law . . . ."). Federal courts thus routinely apply state prejudgment interest law in FSIA cases where, as here, the plaintiff's claim arises under state law. *See, e.g.*, *Capital Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 296 (2d Cir. 2009) (applying New York's statutory prejudgment interest rate); *NML Capital v. Republic of Argentina*, 435 F. App'x 41, 42 (2d Cir. 2011) (same).[4]

Venezuela cites not one decision to the contrary involving the FSIA, instead relying on inapposite cases applying federal prejudgment interest principles for claims arising under *other* federal statutes. *See, e.g.*, *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1071 (2d Cir. 1995) ("The claim asserted by the Producers is purely a product of a federal statute . . . ."). Going even further afield, Venezuela relies on cases involving the federal *post*judgment interest rate. *See, e.g.*, *FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 148 (2d Cir. 2010). Those cases merely establish that the federal postjudgment rate will apply to the *judgments* in these cases,

---

[4] *See also Felice Fedder Oriental Art, Inc. v. Scanlon*, 708 F. Supp. 551, 559 (S.D.N.Y. 1989) (applying New York prejudgment interest law because "New York law governs the question of damages in this case"); *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 164 (D.D.C. 2013) ("Because prejudgment interest is a component of a plaintiff's compensation for a breach of contract claim, D.C. law applies."); *CapitalKeys, LLC v. Democratic Republic of Congo*, 278 F. Supp. 3d 265, 291 (D.D.C. 2017) (applying D.C. prejudgment interest law for breach-of-contract claim).

which Plaintiffs do not dispute.  *See* Pls.' Mot. 19.  That is so because a federal statute governs the rate of interest to be applied to *judgments* issued by federal district courts.  *See* 28 U.S.C. § 1961(a). Courts are obligated to apply that rate, even in diversity cases, unless the parties unambiguously contract around it.  *See Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 112 (2d Cir. 2013).  By contrast, there "is no federal statute that purports to control the rate of prejudgment interest." *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000).  Instead, the controlling federal statute here is the FSIA, which (as discussed) requires the application of substantive state law principles, including state law regarding prejudgment interest.  *See Barkanic*, 923 F.2d at 959.

This Court therefore must apply New York's prejudgment interest statute and award 9% interest on each missed biannual interest payment starting from the date of each missed payment. *See NML Capital*, 952 N.E.2d at 488.  That not only aligns with the parties' expectations, as expressed in the choice-of-law clauses in the parties' contracts, but also avoids the anomaly that would result if Venezuela were permitted to alter the rule of decision for prejudgment interest merely by removing a case from state court to federal court (as it did here in the Pharo case).

### B.      The Court Should Apply New York's Statutory Rate Under Federal Prejudgment Interest Principles

The Court should reach the same result even if federal prejudgment interest principles were to apply here.  "Whether pre-judgment interest is awarded under federal or state law, federal courts have ordinarily looked to state law in determining the appropriate interest rate." *In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1167 (E.D.N.Y. 1996); *see also SEC v. Musella*, 748 F. Supp. 1028, 1043 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 138 (2d Cir. 1990).  This is the "majority approach" in private federal securities actions.  *Deng v. 278 Gramercy Park Grp. LLC*, No. 12-CV-7803, 2014 WL 1016853, at *11 (S.D.N.Y. Mar. 14, 2014).  It is also consistent with the approach adopted by Judge Griesa and the Second Circuit in the Argentina bond litigation.  *See NML Capital, Ltd. v.*

*Republic of Argentina*, No. 05-CV-2434, 2009 WL 1528535, at *2 (S.D.N.Y. May 29, 2009) ("[P]laintiffs here are entitled to statutory interest on interest accruing under the contract even after maturity."); *NML Capital*, 435 F. App'x 41.

More importantly, application of New York's statutory rate is necessary "to fully compensate [Plaintiffs] for actual damages suffered." *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992). Venezuela pejoratively casts Plaintiffs' request for "prejudgment interest on interest" as "over-compensation," suggesting that the bonds' biannual interest payments will be fully compensatory once paid. Venez. Br. 26–27. But that is incorrect.

The bonds' biannual interest payments are "designed to reimburse [Plaintiffs] for the loss of use of the *principal* during the relevant . . . time interval." *NML Capital*, 952 N.E.2d at 494 (emphasis added). Because the biannual interest payments continue to accrue post-maturity, Plaintiffs have not requested statutory prejudgment interest on Venezuela's missed principal payments. *See* Pls.' Mot. 16. But statutory prejudgment interest *is* necessary to fully compensate Plaintiffs for the missed biannual interest payments themselves. As the New York Court of Appeals has explained, "statutory interest on . . . unpaid interest payments compensates the bondholders for a *different loss*—the failure of the issuer to timely make the interest-only payments." *NML Capital*, 952 N.E.2d at 494 (emphasis added). "If those interest payments had been made, the bondholders could have invested those funds, generating income." *Id.* Thus, to obtain full compensation under New York law, Plaintiffs are entitled to "the loss of the time value" of the missed interest payments, "which can be accomplished only by awarding them statutory interest on the unpaid interest-only payments." *Id.*; *see also Wickham Contracting*, 955 F.2d at

837 (prejudgment interest appropriate when party is "deprived of money that it otherwise would have earned").

Venezuela nevertheless urges the Court to deny Plaintiffs *any* prejudgment interest on missed biannual interest payments because (it says) Plaintiffs "were fully aware of the risk of nonpayment" when they purchased the bonds.  Venez. Br. 26–27.  But the only two cases Venezuela cites offer no support for that dubious proposition.  In the first, the plaintiff-investors had "recouped not only their initial investment, but also . . . received 10.2 percent return on their capital, exclusive of additional funds paid to them as the result of several third-party settlements." *Commercial Union Assurance Co., plc v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994).  The court therefore determined that the plaintiffs had already received "a suitable prejudgment interest substitute," and simply declined to award even more interest.  *Id.* at 613.  In the second, the issuer had "continue[d] to make timely interest payments on the principal owed." *Deutsche Bank Tr. Co. Americas v. Am. Gen. Life Ins. Co.*, No. 15-CV-3869, 2015 WL 5178408, at *2, *4 (S.D.N.Y. Sept. 4, 2015).  The court therefore did not address prejudgment interest on missed interest payments at all.

Finally, the Court should not use the federal postjudgment interest rate—which is currently just over 1.5%—as the prejudgment interest rate here.  Venez. Br. 27; Fed. Reserve Bank of St. Louis, *1-Year Treasury Constant Maturity Rate*, https://bit.ly/2v8Vl89.  The federal postjudgment interest statute adopts the interest rate paid by the U.S. government—the most creditworthy borrower in the world.  *See Jones*, 223 F.3d at 139.  An equitable prejudgment interest rate, however, should "take into account the rate of interest the *defendant*"—not the U.S. government— "would have to pay to borrow the money it withheld" from Plaintiffs.  *Id.* (emphasis added).  And

as the 13.625% and 7.75% interest rates on the bonds reveal, New York's 9% statutory rate is a much better approximation of Venezuela's cost of borrowing than the U.S. Treasury rate.

This Court therefore should award New York's 9% statutory prejudgment interest rate regardless whether state or federal prejudgment interest principles apply.

## III.    There Is No Need To Establish Fraud-Prevention Mechanisms In These Cases

Finally, Venezuela argues—for the *first* time in this litigation—that if the Court denies its stay request, it should invite briefing on and establish "fraud-prevention and error-prevention mechanisms" before entry of judgment.  Venez. Br. 27.  This extraordinary request arises from the wholly unwarranted speculation that Plaintiffs might obtain "double payment" by fraudulently selling the beneficial interests upon which they obtain judgment—in violation of (at least) the federal securities laws.  Venez. Br. 28.

Venezuela cites no case where such a double payment has occurred or even been alleged, and it cites no precedent for imposing its proposed fraud-prevention safeguards as a condition of judgment.  Most crucially, however, Venezuela has no evidence that Plaintiffs intend to commit a federal crime.  To the contrary, Venezuela has taken discovery in this matter—indeed, Plaintiffs "cooperated in discovery and provided documents"—and has satisfied itself that "there is no indication of fraud or corruption" here.  Venez. Br. 8.  That should end the inquiry—there is no reason to punish Plaintiffs with further delay in the absence of *any* evidence that they have or are planning on committing fraud on the Court.

And the mere possibility of fraud in potential *future* litigation does not bear on whether the Court should promptly enter judgment in these cases.  In any litigation, transaction, or commercial dealing, there is the possibility that one party may elect to break the law and commit fraud.  That remote possibility does not entitle Venezuela to special, extra-contractual considerations and procedures:  "The law presumes, in the absence of evidence to the contrary, that the business

26

transactions of every man are done in good faith and for an honest purpose." *Jones v. Simpson*, 116 U.S. 609, 615 (1886).  Without such evidence, "bad faith or fraud is never presumed and must be established affirmatively." *Amoco Prod. Co. v. Heimann*, 904 F.2d 1405, 1412 (10th Cir. 1990).  If and when Venezuela has *actual* evidence of fraud, a court may address that issue in the appropriate case.

In any event, to the extent there is any merit to Venezuela's request, the proper course is not to accept an additional round of briefing, further delaying judgment, but instead to include in the judgment a direction that Plaintiffs are not to sell the bonds without advising the Court in advance and obtaining approval, as was done in the Argentina litigation.  *See Lightwater Corp. Ltd. v. Republic of Argentina*, No. 02-CV-3804, 2003 WL 21146665, at *1 (S.D.N.Y. May 16, 2003).

## CONCLUSION

This Court should deny Venezuela's request for a stay of any duration and should promptly enter judgment in favor of Plaintiffs.

Dated:  February 6, 2020

Washington, DC and New York, NY

Respectfully submitted,

_/s/ Jeremy L. Wallison_
Jeremy L. Wallison, Esq.
jw@wallisonllp.com
20 East 69th Street, Suite 5A
New York, NY  10021
(212) 292-1011

_Counsel for Casa Express Corp,_
_as Trustee of Casa Express Trust_

_/s/ Matthew D. McGill_
Matthew D. McGill
MMcGill@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 887-3680

Anne M. Champion
AChampion@gibsondunn.com
200 Park Avenue
New York, N.Y.  10166
(212) 351-4000

_Counsel for Plaintiffs Pharo Gaia_
_Fund, Ltd. and Pharo Macro Fund,_
_Ltd._